## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GM PHOTO, LLC, a New Jersey limited liability company,<br><br>       Plaintiff,<br><br>  -against-<br><br>FOCUS CAMERA, INC., a New York corporation, MICHAEL SILBERSTEIN, an individual, and CHASSY KIRZNER, an individual,<br><br>       Defendants, | Case No. 1:22-cv-10339 |

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>MOTION FOR PRELIMINARY INJUNCTION</u>

ROBINS KAPLAN LLP
1325 Avenue of the Americas, Suite 2601
New York, NY 10019
Tel.:  212-980-7458
Facsimile:  212-980-7499

BERGER SINGERMAN, LLP
*Pro Hac Vice Pending*
1450 Brickell Avenue, Suite 1900
Miami, Florida 33131
Tel.: 305-755-9500
Facsimile: 305-714-4340

*Attorneys for Plaintiff GM Photo, LLC*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. ii

I.      PRELIMINARY STATEMENT ............................................... 1

II.     FACTUAL BACKGROUND ................................................... 2

III.    ARGUMENT ........................................................................... 5

        A.      Legal Standard .......................................................... 5

        B.      GM Photo is Likely to Succeed on the Merits of its Each of its
                Claims ....................................................................... 6

                i.      GM Photo is Likely to Succeed on the Merits of its
                        Claim for Tortious Interference With Business Advantage
                        or Relationships ........................................... 6

                ii.     GM Photo is Likely to Succeed on the Merits of its
                        Claim for Tortious Interference With Contract ................ 8

                iii.    GM Photo is Likely to Succeed on the Merits of its
                        Claim for Commercial Defamation .................... 11

                iv.     GM Photo is Likely to Succeed on the Merits of its
                        Claim for Trade Libel ..................................... 13

                v.      GM Photo is Likely to Succeed on the Merits of its
                        Claim for Deceptive Acts or Trade Practices in V
                        iolation of N.Y. General Business Law § 349 .................. 15

                vi.     GM Photo is Likely to Succeed on the Merits of its
                        Claim for Common Law Unfair Competition................... 16

        C.      GM Photo Will Suffer Irreparable Harm if a Preliminary
                Injunction is Not Entered ................................................ 17

        D.      The Harm to GM Photo Outweighs Any Possible Harm
                to Defendants ......................................................... 20

        E.      The Public Interest Will Be Served by the Issuance of
                an Injunction .......................................................... 21

        F.      The Public Interest Will Be Served by the Issuance of
                an Injunction .......................................................... 22

IV.     CONCLUSION......................................................................22

i

# TABLE OF AUTHORITIES

Page

**Cases**

*3M Co. v. Performance Supply, LLC,*
  458 F. Supp. 3d 181 (S.D.N.Y. 2020) ...................................................................... 20

*Angio-Med. Corp. v. Eli Lilly & Co.,*
  720 F. Supp. 269 (S.D.N.Y. 1989) ............................................................................ 14

*Beauty Beauty USA, Inc. v. Chin Hong Luo,*
  No. 11 CIV. 5349 LAK, 2011 WL 4952658 (S.D.N.Y. Oct. 13, 2011) ................................ 13

*Calvin Klein Trademark Tr. v. Wachner,*
  129 F. Supp. 2d 248 (S.D.N.Y. 2001) ...................................................................... 12

*Chau v. Lewis,*
  771 F.3d 118 (2d Cir. 2014) ................................................................................ 12

*Church of Scientology Int'l v. Eli Lilly & Co.,*
  778 F. Supp. 661 (S.D.N.Y. 1991) .......................................................................... 11

*Coca-Cola N. Am. v. Crawley Juice, Inc.,*
  No. 09 CV 3259 JG RML, 2011 WL 1882845 (E.D.N.Y. May 17, 2011) ............................ 17

*Coty Inc. v. Excell Brands, LLC,*
  277 F. Supp. 3d 425 (S.D.N.Y. 2017) ...................................................................... 21

*Electrolux Corp. v. Val-Worth, Inc.,*
  6 N.Y.2d 556, 161 N.E.2d 197 (1959) ...................................................................... 17

*Eng v. Smith,*
  849 F.2d 80 (2d Cir. 1988) .................................................................................... 6

*Enigma Software Grp. USA, LLC v. Bleeping Computer LLC,*
  194 F. Supp. 3d 263 (S.D.N.Y. 2016) ...................................................................... 11

*Env't Servs., Inc. v. Recycle Green Servs., Inc.,*
  7 F. Supp. 3d 260 (E.D.N.Y. 2014) .......................................................................... 10

*Fossil Grp., Inc. v. Angel Seller LLC,*
  No. 20CV2441WFKTAM, 2021 WL 5409605 (E.D.N.Y. Aug. 27, 2021),
  *report and recommendation adopted,* No. 20CV2441WFKTAM, 2021 WL 4520030
  (E.D.N.Y. Oct. 4, 2021), *reconsideration denied,* No. 20CV02441HGTAM, 2022 WL
  3655177 (E.D.N.Y. Aug. 25, 2022) .......................................................................... 13

*Freedom Calls Found. v. Bukstel*,
   No. 05CV5460(SJ)(VVP), 2006 WL 845509 (E.D.N.Y. Mar. 3, 2006) ................................ 7

*GeigTech E. Bay LLC v. Lutron Elecs. Co.*, No. 18 CIV. 5290 (CM),
   2019 WL 1768965 (S.D.N.Y. Apr. 4, 2019) ......................................................................... 13

*Goldhirsh Grp., Inc. v. Alpert*,
   107 F.3d 105 (2d Cir. 1997) ................................................................................................... 7

*Gov't Emps. Ins. Co. v. Mayzenberg*,
   No. 17-CV-2802, 2018 WL 6031156 (E.D.N.Y. Nov. 16, 2018) ......................................... 22

*Gov't Emps. Ins. Co. v. Wellmart RX, Inc.*,
   435 F. Supp. 3d 443 (E.D.N.Y. 2020) .................................................................................. 22

*In re Alert Holdings, Inc.*,
   148 B.R. 194, 204 (Bankr. S.D.N.Y. 1992) ...................................................................... 7, 18

*Int'l Mins. & Res., S.A. v. Pappas*,
   96 F.3d 586 (2d Cir. 1996) ..................................................................................................... 8

*Jacobson & Co. v. Armstrong Cork Co.*,
   548 F.2d 438 (2d Cir. 1977) ................................................................................................. 18

*Josie Maran Cosms., LLC v. Shefa Grp. LLC*,
   No. 20CV3702NGGCLP, 2022 WL 3586746 (E.D.N.Y. Aug. 22, 2022) ............................. 8

*Lazar's Auto Sales, Inc. v. Chrysler Fin. Corp.*,
   83 F. Supp. 2d 384 (S.D.N.Y. 2000) ...................................................................................... 8

*Lee v. City of Rochester*,
   174 Misc. 2d 763, 663 N.Y.S.2d 738 (Sup. Ct. 1997),
   *aff'd*, 254 A.D.2d 790, 677 N.Y.S.2d 848 (1998) ................................................................. 12

*Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.*,
   75 F. Supp. 3d 592 (S.D.N.Y. 2014) ...................................................................................... 6

*Masefield AG v. Colonial Oil Indus.*,
   No. 05 CIV. 2231 (PKL), 2006 WL 346178 (S.D.N.Y. Feb. 15, 2006) ................................ 11

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*,
   704 F. Supp. 2d 305 (S.D.N.Y. 2010) .................................................................................. 21

*New York Progress & Prot. PAC v. Walsh*,
   733 F.3d 483 (2d Cir. 2013) ................................................................................................. 20

iii

*New York Times Co. v. Sullivan*,
    376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964) ........................................................ 12

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20, 647 N.E.2d 741 (1995) ................................................................................. 16

*POSCO Energy Co. v. FuelCell Energy, Inc.*,
    560 F. Supp. 3d 747 (S.D.N.Y. 2021) .................................................................................... 7

*Quezada v. BP Prod. N. Am., Inc.*,
    No. 06 CV 5378 SJ, 2006 WL 3837720 (E.D.N.Y. Dec. 1, 2006) ...................................... 19

*Ratajack v. Brewster Fire Dep't, Inc. of the Brewster-Se. Joint Fire Dist.*,
    178 F. Supp. 3d 118 (S.D.N.Y. 2016) .................................................................................. 12

*Rodriguez by Rodriguez v. DeBuono*,
    162 F.3d 56 (2d Cir. 1998), *opinion amended and superseded sub nom.*
    *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227 (2d Cir. 1999) ............................... 18

*Ruder & Finn Inc. v. Seaboard Sur. Co.*,
    52 N.Y.2d 663, 422 N.E.2d 518 (1981) ......................................................................... 12, 14

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010) .................................................................................................... 6

*Sheth v. New York Life Ins. Co.*,
    273 A.D.2d 72, 709 N.Y.S.2d 74 (2000) ............................................................................. 16

*Soter Techs., LLC v. IP Video Corp.*,
    523 F. Supp. 3d 389 (S.D.N.Y. 2021) .................................................................................. 15

*Time, Inc. v. Firestone*,
    424 U.S. 448, 96 S. Ct. 958, 47 L. Ed. 2d 154 (1976) ........................................................ 12

*Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*,
    60 F.3d 27 (2d Cir. 1995) ............................................................................................... 18, 19

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*,
    800 F. Supp. 2d 515 (S.D.N.Y. 2011), *aff'd*, 511 F. App'x 81 (2d Cir. 2013) .................... 21

*Univ. of Texas v. Camenisch*,
    451 U.S. 390, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981) ..................................................... 6

*Waldman Pub. Corp. v. Landoll, Inc.*,
    43 F.3d 775 (2d Cir. 1994) .................................................................................................. 21

*Weisblum v. Prophase Labs, Inc.,*
    88 F. Supp. 3d 283 (S.D.N.Y. 2015) ........................................................................ 15

*West Wade Park Land Holdings, LLC v. Kalikow*,
    589 F. Supp. 3d 335 (S.D.N.Y. 2022), *amended,* No. 21-CV-1657 (LJL),
    2022 WL 2479110 (S.D.N.Y. July 6, 2022) ........................................................... 6

*Wilson v. Nw. Mut. Ins. Co.,*
    625 F.3d 54 (2d Cir. 2010) ....................................................................................... 16

*Wolston v. Reader's Dig. Ass'n, Inc.,*
    443 U.S. 157, 99 S. Ct. 2701, 61 L. Ed. 2d 450 (1979) ........................................ 12

*Xelus, Inc. v. Servigistics, Inc.,*
    371 F. Supp. 2d 387 (W.D.N.Y. 2005) .................................................................. 19

**Other Authorities**

Restatement (Second) of Torts § 767 (1979) ................................................................ 7

Plaintiff GM Photo LLC ("**GM Photo**"), pursuant to Fed. R. Civ. P. 65, submits this memorandum of law in support of its motion for a preliminary injunction against Defendants Focus Camera, Inc. ("**Focus Camera**"), Michael Silberstein ("**Silberstein**"), and Chassy Kirzner ("**Kirzner**") (collectively, "Defendants").

## I.     PRELIMINARY STATEMENT

This case arises from Defendants' unlawful scheme to destroy a small business and eradicate a competitor.  As detailed in the supporting Affidavit of GM Photo's Gabriel Simony ("Simony Aff.") and GM Photo's Complaint [ECF No. 1], Focus Camera, Silberstein and Kirzner have made overtly false counterfeiting claims against GM Photo to Amazon to eliminate GM Photo from selling goods in competition with Focus Camera on Amazon.  Preliminary injunctive relief is warranted because Defendant Silberstein has callously threatened to act to "***shut down the entire ... GM Photo [Amazon] account down completely***."  Defendants are well aware that a "shut down" from the world's largest online marketplace would quickly put GM Photo out of business.  Indeed, the destruction of GM Photo's business—which would likely result in a boon to Focus Camera's business—appears to be Defendants' goal.

Focus Camera's unlawful acts against GM Photo include tortious interference, commercial defamation, trade libel, violations of New York statutory deceptive acts or trade practices, and common law unfair competition.

Defendants should be immediately and preliminary enjoined from (1) submitting false counterfeiting complaints to Amazon; and (2) taking steps to shut down GM Photo's account on Amazon "completely," as they have threatened in writing.

1

## II.     FACTUAL BACKGROUND

GM Photo is a small business that has operated the Digital Village storefront for over 10 years on Amazon and sells high-end, top-quality photographic equipment, among other goods. Simony Aff. ¶ 4.  GM Photo's goods for sale includes authentic, specifically handcrafted camera lenses manufactured by Sigma, a premium Japanese photographic and video graphic technology manufacturer that exclusively produces photography and video-related products in Japan.  *Id.* ¶ 5.  GM Photo sources its Sigma products from a verified and authorized distributor for resale, and has, at all material times, sold 100% authentic and genuine Sigma products on Amazon.  *Id.* ¶¶ 6-7.

Focus Camera is a competitor of GM Photo and sells Sigma products on Amazon and in retail stores. *Id.* ¶ 11.  Frustrated by the presence of a competitor, and fearful of losing sales or market share, Focus Camera, its CEO, Silberstein, and its Director of Amazon Sales, Kirzner, carried out an unlawful and anticompetitive scheme to eliminate GM Photo's sales on Amazon. Complaint [ECF. No. 1] ("Complaint") ¶ 3. Kirzner, Focus Camera's Director of Amazon Sales, together with Focus Camera CEO Silberstein and unknown actors within Focus Camera, submitted false claims in October 2022 to Amazon misrepresenting that GM Photo's Sigma products sold in competition with Focus Camera were counterfeit. *Id.* ¶ 22.

Specifically, on or about October 9 and October 17, Kirzner, under the direction of Silberstein, maliciously submitted false claims that certain of GM Photo's goods were counterfeit to Amazon and also claimed to possess false intellectual property rights. *Id.* ¶¶ 23-38; Simony Aff. ¶¶ 13-14 and Ex. 3, 5. Defendants knew, or should have known,

before the initial October 9, 2022, bogus counterfeit claim that GM Photo's products are genuine and authentic because high-end photographic equipment, including the subject digital single-lens reflex camera ("**DSLR**") or single-lens reflect camera ("**SLR**") lenses, are virtually impossible to counterfeit as they include elaborate parts and electric circuits. Complaint ¶¶ 36-43.

GM Photo only sells 100% authentic and genuine Sigma products.  Simony Aff. ¶ 6. Defendants also knew, or should have known, before the initial October 9, 2022 bogus counterfeit claim that GM Photo's products are genuine because of its experience selling products on Amazon in direct competition with GM Photo. Complaint ¶ 36. Furthermore, consumers of high-end photographic equipment are sophisticated and able to identify and adduce counterfeit products because they do not satisfy glass, component, electronic, or safety standards for quality, let alone image quality after using the photographic lenses.  *Id.*

GM Photo is informed that Defendants have made the same false claims against other sellers on Amazon in advance of the 2022 holiday buying season because there are "too many sellers" of Sigma products on Amazon. Simony Aff. ¶ 26.

Defendants' October 9 false claim led to Amazon's same-day issuance of a warning to GM Photo.  Simony Aff. ¶ 12.  In response to the initial false Amazon notice, GM Photo contacted Kirzner via email on October 9 and stated that GM Photo's Amazon-listed items are brand new and authentic models purchased through authorized channels. *Id.* ¶ 13.  GM Photo further stated that Focus Camera and Kirzner were wrongfully slandering GM Photo's company and damaging GM Photo's Amazon seller account. *Id.*

Defendants did not respond to GM Photo's email. *Id*. Accordingly, on October 11, 2022, GM Photo, through its counsel, sent a letter to Defendants Focus Camera and Silberstein requesting immediately withdrawal of the false counterfeit claims to Amazon. *Id*. ¶ 18. Intent on eliminating the competition, and in apparent disregard of GM Photo's letter, Defendants escalated their conniving measures and submitted more bogus counterfeit claims.  Specifically, on October 17, Kirzner submitted additional false counterfeit claims, leading to Amazon's issuance of a second warning notifying GM Photo of Defendants' scheme wrongfully claiming additional of GM Photo's products sold on Amazon were counterfeit.  *Id*. ¶ 14.

On October 24, 2022, Silberstein responded to GM Photo's October 11 demand by effectively conceding that the spurious counterfeit claims made to Amazon were false. *Id*. Ex. 8.  Silberstein's cynical response to GM Photo's demand letter was solely focused on red-herring warranty issues and glaringly conceded Defendants' lack of merit at all times for the bogus counterfeit claims by omission.  In addition, in furtherance of Defendants' ploy to remove GM Photo from Amazon, Silberstein threatened to take acts that "***might shut down the entire ... GM Photo account down completely*.**" *Id*. at Exhibit 8.

By notices sent on or about October 25, Amazon informed GM Photo that its listings were suspended and would not be reactivated unless Amazon received either (1) a letter of authorization (LOA) or licensing agreement (LA) from the rights owner indicating that you are authorized to use their intellectual property; (2) an invoice to indicate that Plaintiff's products are original and are not duplicates or copies thereby

infringing on the intellectual property; or (3) a retraction from the rights owner to be sent to Amazon directly. *Id*. ¶ 19.

GM Photo engaged legal counsel and diligently worked to submit the documents required by Amazon to re-activate the suspended listings, including submitting (1) Plaintiff's purchase invoices from authorized Sigma distributor Circuit City; (2) a letter from Sigma authorizing Circuit City as a distributor; and (3) a letter from Circuit City authorizing GM Photo LLC as an authorized dealer. *Id*. ¶ 20.

As a longtime seller on Amazon, GM Photo's Digital Village account enjoys certain grandfathered account benefits, including featured account, "Buy Box" benefits, and daily payouts that are at risk due to Defendant's false and malicious counterfeit claims. *Id*. ¶¶ 22-23. As stated on the Amazon notices that GM Photo Received and are attached as Ex. 3 and 5 to the Simony Affidavit, Amazon has stated in writing "We reserve the right to destroy the inventory associated with this violation if proof of authenticity is not provided within 60 days." *Id*. ¶ 24.

On or about November 14, 2022 — and after three weeks of lost sales — Amazon reactivated the suspended listings. *Id*. ¶ 27. However, under the circumstances, there is a current and present danger that Defendants will escalate their written threat to act to "***shut down the entire … GM Photo account down completely.***" *Id*. at Exhibit 8.

## III.   ARGUMENT

### A.   Legal Standard

The purpose of a preliminary injunction is to "preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390,

395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981).  A party seeking a preliminary injunction must establish four elements: (1) a likelihood of irreparable harm; (2) either a likelihood of success on the merits or sufficiently serious questions as to the merits plus a balance of hardships that tips decidedly in their favor; (3) that the balance of hardships tips in their favor regardless of the likelihood of success; and (4) that an injunction is in the public interest."  *Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.*, 75 F. Supp. 3d 592, 604 (S.D.N.Y. 2014); *see also Salinger v. Colting*, 607 F.3d 68, 77 (2d Cir. 2010).

## B.     GM Photo is Likely to Succeed on the Merits of its Each of its Claims

To establish a likelihood of success on the merits, a plaintiff "need not show that success is an absolute certainty. He need only make a showing that the probability of his prevailing is better than fifty percent."  *Eng v. Smith*, 849 F.2d 80, 82 (2d Cir. 1988).  Here, GM Photo is likely to succeed on the merits of each of its six claims.

### i.     GM Photo is Likely to Succeed on the Merits of its Claim for Tortious Interference With Business Advantage or Relationships

In Count I, GM Photo sues Defendants for tortious interference with its business advantage or relationships. A plaintiff suing for tortious interference with prospective economic advantage or a business relationship must prove that: (1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant used dishonest, unfair, or improper means or acted solely out of malice; (4) and the defendant's interference caused injury to the relationship.  *West Wade Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335 (S.D.N.Y. 2022), *amended,* No. 21-CV-1657 (LJL), 2022 WL 2479110 (S.D.N.Y. July 6, 2022);

*POSCO Energy Co. v. FuelCell Energy, Inc.*, 560 F. Supp. 3d 747 (S.D.N.Y. 2021); *Goldhirsh Grp., Inc. v. Alpert*, 107 F.3d 105, 108–09 (2d Cir. 1997). Each prong is met.

Here, GM Photo has submitted documentary evidence establishing that it has a business relationship with a third party, Amazon, and that Defendants intentionally interfered with that relationship by submitting false counterfeit claims to Amazon. Simony Aff. ¶¶ 4-30. GM Photo has likewise alleged that Defendants have employed dishonest, unfair, or improper means in submitting the false counterfeit claims; wrongful means in the context of tortious interference includes fraud or misrepresentation. *Freedom Calls Found. v. Bukstel*, No. 05CV5460(SJ)(VVP), 2006 WL 845509, at *21 (E.D.N.Y. Mar. 3, 2006) (citing Restatement (Second) of Torts § 767 (1979)). Defendants' dishonesty, unfair and improper acts are shown by their submission of a false counterfeit claim to reduce the number of sellers on Amazon in competition with Defendants, escalating their false claims after being contacted by Plaintiff, and then threatening to take steps to have Plaintiff banned from Amazon after receiving a request from Plaintiff to cease and desist from the false claims. Simony Aff. Ex. 8 and ¶¶ 11- 21.

Finally, the documentary evidence shows that GM Photo's relationship with Amazon was indeed injured: Amazon suspended GM Photo from selling Sigma products, causing lost sales, harming GM Photo, and benefitting Defendants. Simony Aff. ¶¶ 12-28. With evidence to support each element of the claim, GM Photo is likely to succeed on its merits. *See, e.g.*, *In re Alert Holdings, Inc.*, 148 B.R. 194, 204 (Bankr. S.D.N.Y. 1992) (holding movant likely to succeed on claim for tortious interference with prospective business relationships where movant properly pleaded claim and alleged defendants

undertook fraudulent and dishonest practices designed to unfairly solicit movant's customers).

Notably, the injury to GM Photo exists despite Amazon's re-activation of the suspended listings after Plaintiff purchased products from resale from a retail outlet. Even temporary interference with the business relationship between GM Photo and Amazon causes lasting damage, and the false claims have sullied GM Photo's good name and standing with Amazon.  In a recent case with analogous facts, the Eastern District explained that despite the defendant's retraction of false counterfeit reports made to Amazon, the plaintiff "was nonetheless injured by losses that occurred in the intervening period between the Amazon Reports and restoration of its selling privileges after the retraction." *Josie Maran Cosms., LLC v. Shefa Grp. LLC*, No. 20CV3702NGGCLP, 2022 WL 3586746, at *8 (E.D.N.Y. Aug. 22, 2022).  Accordingly, GM Photo is likely to succeed on its claim for tortious interference with prospective economic advantage or business relationships.

**ii.**   **GM Photo is Likely to Succeed on the Merits of its Claim for Tortious Interference With Contract**

In Count II, GM Photo sues Defendants for tortious interference with contract. Under New York law, the elements of tortious interference with contract are: (1) the existence of a valid contract between the plaintiff and a third party; (2) knowledge of that contract by the defendant; (3) defendant's intentional inducement of a breach by the third party to the contract; and (4) damages to the plaintiff as a result of the third party's breach. *Int'l Mins. & Res., S.A. v. Pappas*, 96 F.3d 586, 595 (2d Cir. 1996); *Lazar's Auto Sales, Inc. v. Chrysler Fin. Corp.*, 83 F. Supp. 2d 384, 391 (S.D.N.Y. 2000). In addition, Amazon's breach

8

must have been caused by the Defendants, and GM Photo must prove that Amazon would not have breached except for the wrongful activities of the Defendants. *Id.* Moreover, the action that induces the alleged breach cannot have been one that the accused tortfeasor was privileged to take. *Id.*

GM Photo has a valid contractual relationship with Amazon. Simony Aff. ¶¶ 4, 29 and Ex. 9; Complaint ¶¶ 75-80. Defendants were aware of that relationship by identifying GM Photo's status as a listed seller on Amazon and reported a series of false trademark infringement claim through Amazon's systems. *Id.* Defendants, who operate an Amazon Marketplace Seller account themselves, had actual knowledge of the terms of GM Photo's contract with Amazon, which is the same as their own. *Id.*

To induce Amazon to suspend GM Photo's listings of Sigma products, Defendants submitted false claims that GM Photo was infringing upon Sigma intellectual property rights that Defendants could assert through affiliation with Sigma's Amazon brand registry. Simony Aff. ¶¶ 16-17. Defendants were successful; the false counterfeit claims resulted in the suspension of multiple of GM Photo's sales listings in competition with Defendants and threatened the destruction of GM Photo's valuable inventory. Simony Aff. ¶¶ 12, 14. Defendants submitted these false claims both before and after they were contacted by GM Photo and asked to withdraw the false claims. *Id.* ¶¶ 12, 14, 18. Defendants threatened to take further acts that could result in the complete suspension of GM Photo's Amazon account after they received GM Photo's demand letter. Simony Aff. Ex. 8. Defendants' brazen interference with GM Photo's agreement with Amazon resulted in breaches of intellectual property indemnification rights.

9

Specifically, Section 6.2 of GM Photo's contract with Amazon, the *Amazon Services Business Solutions Agreement*, states: "Amazon will defend, indemnify, and hold harmless you and your officers, directors, employees, and agents against any third-party Claim arising from or related to … (b) allegations that the operation of an Amazon Site infringes or misappropriates that third party's intellectual property rights." Simony Aff. Ex. 9.

A "Claim", as defined in the *Amazon Services Business Solutions Agreement* means "any third-party claim, loss, damage, settlement, cost, expense, or other liability (including, without limitation, attorneys' fees) (each, a 'Claim')…." *Id.* Breaches of these terms of the *Amazon Services Business Solutions Agreement* were implicated by Defendants.

Amazon suspended GM Photo's listings after Defendants relied on Sigma's intellectual property rights and their brand registry association with Sigma to submit the false counterfeit claims. Simony Aff. ¶¶ 16-17. GM Photo then immediately took steps to address the false counterfeit claims by submitting documents requested by Amazon to show the authenticity of the products, proceeding with an appeals process, and engaging counsel. *Id.* ¶¶ 19-20. Those efforts were not successful, although GM Photo sources the Sigma products from authorized distributor Circuit City. *Id.* ¶¶ 20, 8. On or about November 14, 2022, Amazon reactivated GM Photo's suspended listings of Sigma products. *Id.* ¶ 27.

But the damage has already been done. *See Env't Servs., Inc. v. Recycle Green Servs., Inc.*, 7 F. Supp. 3d 260, 282 (E.D.N.Y. 2014) (finding likelihood of success on merits of tortious interference claim where movant came forward with sufficient evidentiary proof regarding defendants' knowledge of third-party contract, defendants' intentional

10

procurement of third party's breach of that contract, and damages). In addition, under the current circumstances, there is a present danger that Focus Camera and Defendants will escalate Silberstein's written threat. Simony Aff. ¶ 27.

Defendants' illegal and wrongful conduct—making false counterfeit claims under penalty of perjury, defaming GM Photo through fraud and deceit, and intentionally violating Amazon's intellectual property policies and Seller Code of Conduct and applicable New York law—overcomes any economic or competition privilege or defense that they may assert. *See Masefield AG v. Colonial Oil Indus.*, No. 05 CIV. 2231 (PKL), 2006 WL 346178 (S.D.N.Y. Feb. 15, 2006).

### iii. GM Photo is Likely to Succeed on the Merits of its Claim for Commercial Defamation

In Count III, GM Photo brings a claim for commercial defamation. The level of fault that a defamation plaintiff must plead depends on the plaintiff's status. *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263 (S.D.N.Y. 2016). Whether a plaintiff is a public figure is a question of law for the Court to decide. *Church of Scientology Int'l v. Eli Lilly & Co.*, 778 F. Supp. 661, 666 (S.D.N.Y. 1991). For the present purpose of injunctive relief, GM Photo asserts that it is either a private-figure or limited public figure because its conduct as an Amazon Seller is only of interest to certain portions of the public as to a limited range of issues, namely its goods, prices, service, and reputation on the Amazon marketplace. *Enigma Software Group USA, LLC*, 194 F. Supp. 3d 263.[1] GM Photo has pled that Defendants acted with malice necessary for defaming

---

[1] Indeed, GM Photo asserts that it would be "more accurate to say that [GM Photo] was dragged unwillingly into the controversy." *Wolston v. Reader's Dig. Ass'n, Inc.*, 443 U.S.

limited public figures, specifically knowledge that the statements at issue were false or with reckless disregard of whether or not they were false. *Id.* at 288 (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964)). GM Photo has also pled the standard necessary for private-figure plaintiffs by alleging that Defendants acted negligently or acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties. *Id.* (citing *Ratajack v. Brewster Fire Dep't, Inc. of the Brewster-Se. Joint Fire Dist.*, 178 F. Supp. 3d 118, 160 (S.D.N.Y. 2016)).

To establish a claim for defamation under New York law, a plaintiff must allege "(1) a written defamatory factual statement concerning the plaintiff; (2) publication to a third party; (3) fault; (4) falsity of the defamatory statement; and (5) special damages or per se actionability." *Chau v. Lewis*, 771 F.3d 118, 126–27 (2d Cir. 2014). GM Photo is likely to succeed on the merits of this claim. First, Defendants' false counterfeit claims naturally impugn GM Photo's basic integrity and creditworthiness and are therefore defamatory. *See Ruder & Finn Inc. v. Seaboard Sur. Co.*, 52 N.Y.2d 663, 670, 422 N.E.2d 518, 522 (1981) (observing that an action for defamation lies where "a statement impugns the basic

---

157, 166, 99 S. Ct. 2701, 61 L. Ed. 2d 450 (1979); *see also Calvin Klein Trademark Tr. v. Wachner*, 129 F. Supp. 2d 248, 252 (S.D.N.Y. 2001) (defendants' public denials of allegedly defamatory claims "do not constitute their 'injecting' themselves into a public controversy"); *Lee v. City of Rochester*, 174 Misc. 2d 763, 663 N.Y.S.2d 738, 745 (Sup. Ct. 1997), *aff'd*, 254 A.D.2d 790, 677 N.Y.S.2d 848 (1998) ("Litigation ... even if accompanied by press coverage ... does not alone render the dispute a 'public controversy.'") (internal quotation marks and citation omitted); *Time, Inc. v. Firestone*, 424 U.S. 448, 454, 96 S. Ct. 958, 47 L. Ed. 2d 154 (1976) (where respondent was forced to go to court in order to obtain a divorce, her "[r]esort to the judicial process ... [was] no more voluntary in a realistic sense than that of the defendant called upon to defend his interests in court").

integrity or creditworthiness of a business").   As this Court has previously recognized, "[a]ccusations that plaintiff sold 'counterfeit goods,' whether made orally or in writing, would be defamatory per se." *Beauty Beauty USA, Inc. v. Chin Hong Luo*, No. 11 CIV. 5349 LAK, 2011 WL 4952658, at *1 (S.D.N.Y. Oct. 13, 2011).   Indeed, courts faced with similar fact patterns have permitted defamation claims to proceed.   *See, e.g., Fossil Grp., Inc. v. Angel Seller LLC*, No. 20CV2441WFKTAM, 2021 WL 5409605, at *14 (E.D.N.Y. Aug. 27, 2021), *report and recommendation adopted,* No. 20CV2441WFKTAM, 2021 WL 4520030 (E.D.N.Y. Oct. 4, 2021), *reconsideration denied,* No. 20CV02441HGTAM, 2022 WL 3655177 (E.D.N.Y. Aug. 25, 2022) (holding counterclaim plaintiff stated claim for defamation where it alleged defendant falsely reported to Amazon that plaintiff was selling counterfeit Michael Kors products); *GeigTech E. Bay LLC v. Lutron Elecs. Co.*, No. 18 CIV. 5290 (CM), 2019 WL 1768965, at *9 (S.D.N.Y. Apr. 4, 2019) to dismiss defamation claim where nonmovant alleged that movant lied about patent infringement and had reason to know that nonmovant was not engaged in patent infringement).

Furthermore, the false, defamatory statements were published to a third party, Amazon.  Fault is evident, as set forth above, because Defendants acted maliciously or negligently in submitting the false claims. Finally, as set forth above, the statements are per se actionable because they impugn GM Photo's basic integrity and creditworthiness. Accordingly, GM Photo is likely to succeed on its claim for commercial defamation.

### iv.     GM Photo is Likely to Succeed on the Merits of its Claim for Trade Libel

Next, in Count IV, GM Photo brings a claim for trade libel.  Under New York law, "[t]rade libel or product disparagement is an action to recover for words or conduct

which tend to disparage or negatively reflect upon the condition, value or quality of a product or property." *Angio-Med. Corp. v. Eli Lilly & Co.*, 720 F. Supp. 269, 274 (S.D.N.Y. 1989).  In contrast to commercial defamation, which impugns the basic integrity of a business, trade libel impugns the quality of a business's goods or services.  *Ruder & Finn Inc.*, 52 N.Y.2d at 670.

To succeed on a claim for trade libel, a plaintiff must usually establish (1) falsity of the statement; (2) publication to a third person; (3) malice (whether express or implied); and (4) special damages." *Angio-Medical Corp.*, 720 F. Supp. at 274.  "If, however, the disparaging statements impeach the business methods or integrity of the plaintiff himself, special damages need not be proved as a direct accusation." *Id.*

Defendants here made multiple false statements to a third party, Amazon, regarding the authenticity of the Sigma products sold by GM Photo. The falsity of the statements is evidenced by (i) the sales invoices from Circuit City to GM Photo showing that GM Photo purchased authentic Sigma products, and (ii) Amazon's recent decision to lift the suspension imposed on GM Photo.  Furthermore, the statements naturally reflect negatively upon the condition, value, and quality of the Sigma products sold by GM Photo.  Malice is evident from Silberstein's written threat to GM Photo, in which he conceded the lack of merit as to the counterfeit claims and instead complained of warranty coverage over the Sigma products sold by GM Photo.  Silberstein's written threat to take further action that might completely shut down GM Photo's Amazon account further demonstrates the malice behind Defendants' actions.

Finally, because Defendants' false statements impeach GM Photo's business methods and integrity (namely, by falsely contending GM Photo sells counterfeit products), special damages need not be proven.

Nonetheless, GM Photo has suffered a host of pecuniary or economic special damages associated with its reputation and standing on the Amazon marketplace and as a seller subject to Amazon's oversight and review. Defendants have sullied GM Photo's standing with Amazon and caused a material risk that Amazon may take adverse action against GM Photo in the future. Simony Aff. ¶¶ 28, 30. The false counterfeit claims could lead to future suspensions or termination of GM Photo's valuable Seller account and its associated privileges, which are not ordinary but result from a decade as a trusted seller on one of the world's largest e-commerce marketplaces. *See Soter Techs., LLC v. IP Video Corp.*, 523 F. Supp. 3d 389, 410 (S.D.N.Y. 2021). GM Photo has also suffered special damages in the form of loss of customers.

### v.   GM Photo is Likely to Succeed on the Merits of its Claim for Deceptive Acts or Trade Practices in Violation of N.Y. General Business Law § 349

Next, in Count V, GM Photo brings a claim for deceptive acts or trade practices in violation of N.Y. Gen. Bus. Law § 349. Success on a claim for deceptive acts or trade practices requires the plaintiff to establish that: (1) the defendant engaged in consumer-oriented conduct; (2) the conduct was materially misleading; and (3) the plaintiff suffered injury as a result of the deceptive act or practice. *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 292 (S.D.N.Y. 2015). "Consumers" are defined as "those who purchase goods and services for personal, family or household use." *Sheth v. New York Life Ins. Co.*,

273 A.D.2d 72, 709 N.Y.S.2d 74, 75 (2000). The "consumer-oriented" requirement, meanwhile, may be satisfied by showing that the acts in question potentially affect similarly situated consumers. *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010). Finally, the New York Court of Appeals has adopted an objective definition of "misleading," under which the wrongful act must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26, 647 N.E.2d 741 (1995).

Here, Defendants engaged in consumer-oriented conduct by unlawfully attempting to block consumer access to GM Photo's Sigma products. Defendants' unfair practices have a broad impact on similarly situated consumers of photography equipment *and* consumers at large. By filing false counterfeit claims with Amazon, Defendants reduce price competition and the supply of goods in the marketplace on Amazon and in general.

Defendants' conduct was also materially misleading because it resulted in GM Photo's suspension from Amazon. Defendants' actions were therefore likely to mislead a reasonable consumer into believing GM Photo is no longer authorized or able to sell Sigma products. Finally, GM Photo has plainly suffered injury as a result of Defendants' deceptive acts: its Sigma products have already been suspended by Amazon once. Thus, GM Photo is likely to succeed on the merits of this claim.

### vi.  GM Photo is Likely to Succeed on the Merits of its Claim for Common Law Unfair Competition

Finally, in Count VI, GM Photo asserts a claim for common law unfair competition. New York courts broadly construe the tort of unfair competition; "[t]he incalculable

variety of illegal practices denominated as unfair competition is proportionate to the unlimited ingenuity that overreaching entrepreneurs and trade pirates put to use." *Electrolux Corp. v. Val-Worth, Inc.*, 6 N.Y.2d 556, 558, 161 N.E.2d 197 (1959) (internal quotation marks and citations omitted).   However, the tort generally covers three categories of conduct: passing off one's goods as those of another, engaging in activities solely to destroy a rival, and using methods themselves independently illegal.  *Coca-Cola N. Am. v. Crawley Juice, Inc.*, No. 09 CV 3259 JG RML, 2011 WL 1882845, at *7 (E.D.N.Y. May 17, 2011).  Defendants here are guilty of the latter two offenses.

First, Defendants here have engaged in activities designed solely to destroy GM Photo.  They concocted false accusations that resulted in the suspension of GM Photo's Sigma products on Amazon and have further threatened to take actions that would completely shut down GM Photo's Amazon account.

Second, Defendants' methods of competition—i.e., submitting false claims to Amazon that GM Photo sells counterfeit Sigma products—are independently illegal and run afoul of New York tort and statutory law.  Defendants' conduct implicated tortious interference with prospective economic advantages or business relationships, GM Photo's contractual relationship with Amazon, commercial defamation, trade libel, and statutory deceptive or unfair business practices as addressed above.

### C.      GM Photo Will Suffer Irreparable Harm if a Preliminary Injunction is Not Entered

Defendants' ongoing scheme to devastate GM Photo's Amazon business continues to this day and is causing irreparable harm to GM Photo.  Defendant Silberstein has threatened in writing to act to "***shut down the entire ... GM Photo [Amazon] account***

***down completely***." Simony Aff. Ex. 8. Without injunctive relief, that threat is current and present.

Irreparable harm is "injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *Rodriguez by Rodriguez v. DeBuono*, 162 F.3d 56, 61 (2d Cir. 1998), *opinion amended and superseded sub nom. Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227 (2d Cir. 1999). The Second Circuit recognizes that "a threatened loss of goodwill and customers, both present and potential, [cannot] be rectified by monetary damages" and thus warrants injunctive relief. *Jacobson & Co. v. Armstrong Cork Co.*, 548 F.2d 438, 445 (2d Cir. 1977); (affirming finding of irreparable harm because plaintiff "presented ample evidence to show a threatened loss of good will and customers, both present and potential, neither of which could be rectified by monetary damages"); *see also Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 37 (2d Cir. 1995) (collecting Second Circuit cases awarding injunctive relief for loss of goodwill). Harm to a business's operations and reputation is likewise deemed irreparable. *In re Alert Holdings, Inc.*, 148 B.R. at 200.

Here, Defendants' illegal conduct is irreparably harming GM Photo on multiple fronts. GM Photo lost an untold amount of existing and prospective customers and sales due to the suspension of its Sigma products on Amazon. Such harm cannot be quantified and rectified by monetary damages; customers who were unable to find Sigma products on GM Photo's storefront may have been misled into thinking that GM Photo is no longer permitted or able to sell Sigma products. Such an interruption in product availability is devastating to GM Photo's reputation and good will in the industry, despite Amazon's

recent decision to restore the availability of the products.  Even a temporary interruption

to the Sigma products' availability stains GM Photo's good will—customers who were

forced to find an alternative supplier during the interruption may not return to GM

Photo, believing it to be an unreliable or untrustworthy vendor.  *See, e.g., Quezada v. BP*

*Prod. N. Am., Inc.*, No. 06 CV 5378 SJ, 2006 WL 3837720, at *3 (E.D.N.Y. Dec. 1, 2006) ("The

loss of good will constitutes irreparable harm…[and the] interruption of the availability

of a necessary good can negatively affect the provider's good will even if the interruption

is brief").

Furthermore, the harm is actual and imminent because Defendants' scheme has

already led to one Amazon suspension for GM Photo.  *See id.* (finding there was "no doubt

the damage [was] actual and imminent" where the moving party's gas station was

already closed due to the opposing party's actions).  Absent an injunction, there is nothing

to prevent Defendants from submitting additional false counterfeit claims that would

lead to another suspension or even termination of GM Photo's seller privileges.  Indeed,

the imminence of the harm is clear from Silberstein's written threat to take further action

that might completely shut down GM Photo's Amazon account.  The Second Circuit

recognizes that a threat to "the very viability of the plaintiff's business" constitutes

irreparable harm.  *See Tom Doherty Associates, Inc.*, 60 F.3d at 38.

Defendants' false claims have sullied GM Photo's reputation with Amazon and all

business that flows from GM Photo's presence on the website. *See Xelus, Inc. v. Servigistics,*

*Inc.*, 371 F. Supp. 2d 387, 390 (W.D.N.Y. 2005) (finding a likelihood of irreparable harm

where competitor was alleged to be disseminating false, disparaging information about the plaintiff that could hurt its chances of securing business).

Consequently, this irreparable harm to GM Photo must be prevented by the entry of a preliminary injunction against Defendants.

### D.    The Harm to GM Photo Outweighs Any Possible Harm to Defendants

Next, the Court must balance the inconvenience an injunction would cause Defendants against the harm GM Photo will suffer if injunctive relief is denied.  *See New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) (requiring a plaintiff to establish that "the balance of equities tips in his favor").

As has been demonstrated above, absent an injunction GM Photo will suffer irreparable harm, including the potential loss of customers and good will, the destructive effects of consumer confusion and deception, and the damage from unfair competition. Such injuries are not readily quantifiable; moreover, they are actual and imminent.  In contrast, Defendants will suffer virtually no harm if ordered to cease making false counterfeit claims about GM Photo's business.  *See 3M Co. v. Performance Supply, LLC*, 458 F. Supp. 3d 181, 197 (S.D.N.Y. 2020) ("It would not be a 'hardship' for Defendant to refrain from engaging in unlawful activities related to [plaintiff's] brand.").  Instead, they will be in substantially the same position as they are now: fully able to sell their own products and compete fairly.  Permitting Defendants to continue their unlawful conduct during the pendency of this lawsuit would only enable Defendants to commit further legal violations, such as submitting additional false counterfeit reports, in order to increase their own sales at GM Photo's expense.  Defendants' deliberate attempt to mislead

consumers into believing GM Photo's Sigma products are unavailable, inauthentic, or both tips the balance of hardships decidedly in favor of GM Photo.

Furthermore, the injunctive relief sought is narrowly tailored to do nothing more than prevent Defendants from submitting additional false counterfeit claims. Defendants' legitimate business activities would not be burdened or impacted in any way. *See Waldman Pub. Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d Cir. 1994) (recognizing that "[i]njunctive relief should be narrowly tailored to fit specific legal violations" and "should not impose unnecessary burdens on lawful activity."). Accordingly, the balance of harms weighs in favor of granting a preliminary injunction.

### E.   The Public Interest Will Be Served by the Issuance of an Injunction

Finally, an injunction will serve the public interest. As this Court has recognized, "the public has an interest in not being deceived." *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010); *see also U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 541 (S.D.N.Y. 2011), *aff'd*, 511 F. App'x 81 (2d Cir. 2013) ("The consuming public has a protectable interest in being free from confusion, deception and mistake."). An injunction will ensure the public has access to GM Photo's products and is not under any misconception regarding their availability or authenticity. The public interest is also served by the fostering of honest and legitimate and competition. *See, e.g., Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 465 (S.D.N.Y. 2017) (holding the public interest was "plainly" served by an injunction preventing the defendant "from engaging in deceptive and misleading misconduct that violates state unfair competition" laws).

F.      **Waiver of Rule 65(c)'s Bond Requirement is Warranted**

Rule 65(c) of the Federal Rules of Civil Procedure provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper." However, courts have "wide discretion to dispense with the bond requirement" when "there has been no proof of likelihood of harm." *Gov't Emps. Ins. Co. v. Mayzenberg*, No. 17-CV-2802, 2018 WL 6031156, at *10 (E.D.N.Y. Nov. 16, 2018).  Courts have also waived the security requirement where there is a "lack of prejudice to defendants resulting from a preliminary injunction." *Gov't Emps. Ins. Co. v. Wellmart RX, Inc.*, 435 F. Supp. 3d 443, 456 (E.D.N.Y. 2020) (waiving security requirement where inunction would cause no prejudice to defendants).

Here, as in *Mayzenberg* and *Wellmart*, the requested injunction will cause Defendants no prejudice.  Rather, Defendants will be able to carry on with their **<u>lawful</u>** business activities.  Accordingly, waiver of the bond requirement is appropriate.

IV.    **CONCLUSION**

For all of the reasons set forth herein, GM Photo respectfully requests that the Court issue a preliminary injunction in the form attached hereto as **<u>Exhibit 1</u>** against Defendants Focus Camera, Inc., Michael Silberstein, and Chassy Kirzner with at least the following terms:

(1) Defendants must cease making false counterfeit claims to Amazon or any other seller/marketplace;

(2) Defendants must take no acts to shut down GM Photo's account on Amazon;

(3) Defendants must file with the Court within thirty days after the entry of the injunction a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction; and

(4) Defendants must comply with any other the relief the Court deems appropriate to order.

Dated: December 7, 2022

Respectfully submitted,

ROBINS KAPLAN LLP

By: /s/Gabriel Berg
    Gabriel Berg (GB4148)
    Email: GBerg@RobinsKaplan.com
1325 Avenue of the Americas, Suite 2601
New York, NY 10019
Telephone:  212-980-7458
Facsimile: 212-980-7499


Alejandro M. Miyar
(*Pro Hac Vice Pending*)
Email: amiyar@bergersingerman.com
DRT@bergersingerman.com
BERGER SINGERMAN, LLP
1450 Brickell Avenue, Suite 1900
Miami, Florida 33131
Telephone: 305-755-9500
Facsimile: 305-714-4340

*Attorneys for Plaintiff GM Photo, LLC*

23