UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GM PHOTO, LLC

Plaintiff,

v.

FOCUS CAMERA, INC., MICHAEL
SILBERSTEIN, and CHASSY KIRZNER

Defendants.

Civil Action No.:  22-cv-10339 (VSB)

---

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY RELIEF**

---

Wilson Elser Moskowitz Edelman & Dicker LLP
Attorneys for Defendants
150 East 42nd Street
New York, New York 10017

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 2

LEGAL STANDARD ........................................................................................................ 7

ARGUMENT ...................................................................................................................... 8

      A.    The Court is Without Subject Matter Jurisdiction ................................................. 8

      B.    Plaintiff is Seeking a Mandatory Injunction, and is Subject to a Higher Burden ................................................................................................................... 9

      C.    Plaintiff is not only unlikely to succeed on the merits of any of the claims, but is likely to lose on Defendants' pending motion to dismiss under Fed. R. Civ. P. 12 ........................................................................................................ 11

      D.    Plaintiff Fails to Demonstrate Irreparable Harm .................................................. 20

      E.    A Balancing of the Equities Favors Denial of the Injunction ............................... 22

      F.    The Public Interest is Served by Encouraging, Not Limiting, Intellectual Property Enforcement ........................................................................................... 24

      G.    The Rule 65(C) Bond Requirement Should Not Be Waived ................................. 24

CONCLUSION ................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Glob. Tech. LLC v. Sirius Satellite Radio, Inc.*,
  15 Misc. 3d 776, 836 N.Y.S.2d 807 (Sup. Ct. N.Y. Cty. Mar. 8, 2007)..................................15

*In re Alert Holdings, Inc.*,
  148 B.R. 194 (1992).........................................................................................................22

*Allstate Ins. Co. v. Elzanaty*,
  929 F. Supp. 2d 199 (E.D.N.Y. 2013) ...............................................................................20

*Angio-Medical Corp. v. Eli Lilly & Co.*,
  720 F. Supp. 269 (S.D.N.Y. 1989) ...............................................................................17, 19

*Bell & Howell Mamiya Co. v. Masel Supply Co.*,
  719 F.2d 42 (2d Cir. 1983)................................................................................................20

*Bowman v. Campbell*,
  850 F. Supp. 144 (N.D.N.Y. 1994) ....................................................................................22

*Carter v. HealthPort Techs., LLC*,
  822 F.3d 47 (2d Cir. 2016)..................................................................................................9

*Castillo Grand, LLC v. Sheraton Operating Corp.*,
  719 F.3d 120 (2d Cir. 2013)................................................................................................8

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*,
  547 F.3d 115 (2d Cir. 2008)..............................................................................................12

*Chau v. Lewis*,
  771 F.3d 118 (2d Cir. 2014)..............................................................................................18

*Cummings v. City of New York*,
  No. 19-CV-7723 (CM)(OTW), 2020 U.S. Dist. LEXIS 31572, 2020 WL
  882335 (S.D.N.Y. Feb. 24, 2020) ......................................................................................18

*Dan-Foam A/S & Tempur-Pedic, Inc. v. Brand Named Beds, LLC*,
  500 F. Supp. 2d 296 (S.D.N.Y. 2007).................................................................................14

*Deer Consumer Prods., Inc. v. Little Grp.*,
  2012 NY Slip Op 52157(U), 37 Misc. 3d 1224(A) (Sup. Ct. N.Y. Cty. Nov.
  15, 2012) .........................................................................................................................15

*Palazzo ex rel. Delmage v. Corio*,
  232 F.3d 38 (2d Cir. 2000).................................................................................................8

*Dillon v. City of New York*,
   261 A.D.2d 34, 704 N.Y.S.2d 1 (1st Dept. 1999)...................................................17

*Dobies v. Brefka*,
   273 A.D.2d 776, 710 N.Y.S.2d 438 (3rd Dept. 2000) ..........................................15

*Drug Rsch. Corp. v. Curtis Pub. Co.*,
   7 N.Y.2d 435 (1960) .............................................................................................19

*El Greco Leather Prods. Co. v. Shoe World, Inc.*,
   806 F.2d 392 (2d Cir. 1986)..................................................................................13

*Energizer Brands, LLC v. My BAttery Supplier, LLC*
   529 F. Supp. 3d 57 (S.D.N.Y. 2021)....................................................................14

*Finnegan v. Long Island Power Auth.*,
   409 F.Supp.3d 91 (E.D.N.Y. 2019) .......................................................................8

*Freedom Holdings, Inc. v. Spitzer*,
   408 F.3d 112 (2d Cir. 2005)..................................................................................20

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*,
   50 N.Y.2d 183 (1980) ...........................................................................................17

*Jacobson & Co. v. Armstrong Cork Co.*,
   548 F.2d 438 (2d Cir. 1977)..................................................................................21

*Josie Maran Cosms., LLC v. Shefa Grp. LLC*,
   No. 20cv3702, 2022 WL 3586746 (E.D.N.Y. Aug. 22, 2022) .............................15

*Kamerling v. Massanari*,
   295 F.3d 206 (2d Cir. 2002)..................................................................................20

*Kerik v. Tacopina*,
   64 F. Supp. 3d 542 (S.D.N.Y. 2014).....................................................................17

*Kipper v. NYP Holdings Co.*,
   12 N.Y.3d 348, 912 N.E.2d 26, 884 N.Y.S.2d 194 (N.Y. 2009) ...........................17

*Linardos v. Fortuna*,
   157 F.3d 945 (2d Cir. 1998)....................................................................................8

*Los Angeles v. Lyons*,
   461 U.S. 95 (1983)................................................................................................16

*Mastrovincenzo v. City of New York*,
   435 F.3d 78 (2d Cir. 2006)......................................................................................9

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990) ................................................................................................... 19

*N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*,
  883 F.3d 32 (2d Cir. 2018) ............................................................................ 7, 9, 10

*N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*,
  684 F.3d 286 (2d Cir. 2012) ................................................................................... 7

*N.Y. Times Co. v. Sullivan*,
  376 U.S. 254 (1964) ............................................................................................... 18

*Nomination Di Antonio E Paolo Gensini S.N.C. v. H.E.R. Accessories Ltd.*,
  07 Civ. 6959 (DAB), 2009 U.S. Dist. LEXIS 117368 (S.D.N.Y. Dec. 14,
  2009) ..................................................................................................................... 19

*Novartis Animal Health US, Inc. v. LM Connelly & Sons, Pty Ltd.*,
  2005 U.S. Dist. LEXIS 15214 (S.D.N.Y. July 20, 2005) ...................................... 13

*Poznanski v. Wang*,
  2009 N.Y. Misc. LEXIS 6076 (N.Y. Sup. Ct. Aug. 25, 2009) ............................... 20

*Premium Mortg. Corp. v. Equifax, Inc.*,
  583 F.3d 103 (2d Cir. 2009) ................................................................................. 12

*Quezada v. BP Prod. N. Am., Inc.*,
  2006 WL 3837720 (2006) ...................................................................................... 22

*RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.*,
  No. 14CV6294-LTS-HBP, 2015 U.S. Dist. LEXIS 111823 (S.D.N.Y. Aug.
  24, 2015) ............................................................................................................... 19

*Ret. Sys. v. Morgan Stanley & Co.*,
  772 F.3d 111 (2d Cir. 2014) ................................................................................... 8

*RFP, LLC v. SCVNGR, Inc.*,
  788 F. Supp. 2d 191 (S.D.N.Y. 2011) ....................................................... 12, 13, 14

*Scutti Enters. v. Park Place Entm't Corp.*,
  322 F.3d 211 (2d Cir. 2003) ................................................................................. 13

*Shapiro & Son Bedspread Corp. v. Royal Mills Assocs.*,
  764 F.2d 69 (2d Cir. 1985) ................................................................................... 14

*St. Amant v. Thompson*,
  390 U.S. 727 (1968) ............................................................................................... 18

iv

*Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*,
    60 F.3d 27 (2d Cir. 1995)............................................................................7, 10

*U.S. Liab. Ins. Co. v. M Remodeling Corp.*,
    444 F.Supp.3d 408 (E.D.N.Y. 2020) ...................................................................8

*White Plains Coat & Apron Co., Inc. v. Cintas Corp.*,
    8 N.Y.3d 422 (2007) ...........................................................................................16

*Winter v. Natural Res. Defense Council, Inc.*,
    555 U.S. 7 (2008) ..................................................................................................7

*Xelus Inc. v. Servigistics, Inc.*,
    371 F. Supp. 2d 387 (W.D.N.Y. 2005) ...............................................................22

**Rules**

Fed. R. Civ. P. 9(g) .................................................................................................19

Fed. R. Civ. P. 12 ....................................................................................................11

**Statutes**

28 U.S.C. § 1332(a) ..................................................................................................8

New York Civil Rights Law § 76-A .......................................................................17

New York General Business Law § 349 ...........................................................12, 19

Defendants Focus Camera, Inc. ("Focus Camera"), Michael Silberstein ("Mr. Silberstein"), and Chassy Kirzner ("Ms. Kirzner") (collectively, "Defendants"), by their attorneys, respectfully submit this Memorandum of Law in opposition to the Motion for Preliminary Injunction (the "Motion") filed by the Plaintiff, GM Photo LLC ("Plaintiff" or "GM Photo"). In support of their opposition, Defendants hereby submit this Memorandum of Law, along with the declaration of Chassy Kirzner ("Kirzner Decl.") and accompanying exhibits, which have been contemporaneously filed herewith.

## PRELIMINARY STATEMENT

This action arises from a bold offensive initiative taken by an unauthorized seller of infringing goods on Amazon, who seems to believe that Amazon's policies (and Plaintiff's exploitation of those policies) supersede federal law. Plaintiff has been selling, and seemingly continues to sell Sigma Corporation of America, or Sigma, branded products on Amazon. Plaintiff is not an authorized Sigma dealer. Sigma products sold by unauthorized parties do not carry with them the 4-year manufacturer's warranty that those sold by authorized retailers carry. Plaintiff does not disclose any of these facts in its product listings, and indeed sells its products on Amazon listings alongside products from authorized dealers in violation of the Lanham Act.

Under the direction and authorization of Sigma—the ultimate rights holder of the Sigma brand—Focus Camera submitted notices to Amazon that the goods sold by GM Photo, known only at the time as Digital Village (the name of its Amazon storefront), were without the 4-year warranty, and therefore illegitimate. Against that backdrop, and based solely on Plaintiff's self-serving allegations regarding wholly speculative harm, Plaintiff seeks the extraordinary relief of proscribing Defendants from simply alerting Amazon to future potentially infringing listings.

This overreaching and baseless motion should be denied in its entirety. First, the Complaint fails to properly plead subject matter jurisdiction, thereby leaving the Court without jurisdiction to impose injunctive relief.  Second, Plaintiff cannot establish likelihood of success on the merits. In fact, each and every cause of action in the Complaint is subject to dismissal on the pleadings. Third, even if Plaintiff were to prove its causes of action, Plaintiff could be made whole by money damages. Accordingly, there is no threat of irreparable harm. In short, Plaintiff cannot satisfy any of the requirements for injunctive relief.

## STATEMENT OF FACTS

GM Photo is the operator of the "Digital Village" Amazon storefront, which sells a variety of electronics ranging from video game controllers to electronics chargers to, pertinently here, camera accessories. Kirzner Decl. ¶ 9. Due to the range of products and limited quantities thereof being sold through the storefront, Digital Village appears to operate on an overstock or opportunist model, obtaining limited quantities of products from various sources, often including goods intended for sale in other markets, goods without warranties, or goods with different packaging, all commonly known in the industry as "grey goods." Kirzner Decl. ¶ 12. Digital Village utilizes the Fulfillment by Amazon ("FBA") platform, whereby Digital Village acquires products and sends them to Amazon's fulfillment centers, then Amazon picks, packs, and ships the orders made by customers. Kirzner Decl. ¶ 13. Digital Village's Amazon storefront's reviews, 10% of which are below 4-stars, list several complaints of missing parts, items not matching descriptions, and wrong items altogether. Kirzner Decl. ¶ 11.

Focus Camera has operated as a retailer of photography and video equipment and accessories for over forty years, selling through its brick-and-mortar locations in New York and New Jersey, and now selling through its own website, focuscamera.com, and through storefronts

on various online marketplaces, including Amazon.com. Kirzner Decl. ¶ 2. Focus Camera is an authorized dealer of hundreds of brands and prides itself on quality, customer service, and integrity in each sale that it makes. Kirzner Decl. ¶ 3. Focus Camera's Amazon storefront's reviews boast an impressive 96% positive rating. Kirzner Decl. ¶ 3.

Non-party Sigma Corporation of America is a manufacturer of high-end lenses and camera accessories. Kirzner Decl. ¶ 5. To ensure quality control, Sigma sells its products through authorized dealers. Kirzner Decl. ¶ 5. Sigma's agreements with its authorized dealers provide that dealers are prohibited from selling to resellers. Kirzner Decl. ¶ 16. Sigma products sold by authorized dealers carry a 4-year manufacturer's warranty. Kirzner Decl. ¶ 16; Kirzner Decl., Ex. A. Any products sold by non-authorized dealers have no manufacturer's warranty, and if a customer were to come to Sigma with an issue in relation to these re-sold products, it costs a minimum of $250.00 to address the issue.  Kirzner Decl. ¶ 16; Kirzner Decl., Ex. A.

Focus Camera is an authorized dealer of Sigma products. Kirzner Decl. ¶ 4; Kirzner Decl., Ex. B. Over the course of the parties' relationship, Focus Camera, under the authority and at the direction of Sigma, has been authorized to enforce Sigma's rights on the Amazon platform. Kirzner Decl. ¶¶ 6-7, 18-19. Akin to a game of whack-a-mole, vendors frequently pop up on Amazon to sell limited quantities of unauthorized Sigma products, obtained through unknown sources. Kirzner Decl. ¶ 7. These products are frequently designated for sale elsewhere, may be overstock, display models, damaged, or counterfeit. Kirzner Decl. ¶ 7. Additionally, unless sold by an authorized dealer, products bearing the Sigma mark do not carry with them the 4-year manufacturer's warranty, making them materially different from authorized sales. *See* Kirzner Decl., Ex. A.

To ensure Sigma's quality control and to protect Focus Camera's rights as an authorized dealer, Sigma's directive to Focus Camera is to cross-reference any of these Amazon vendors against Sigma's authorized dealer list, and if they are not authorized, to seek Amazon's assistance in preventing the sale of infringing goods.  Kirzner Decl. ¶ 7. Plaintiff concedes that Defendants had the authority to act on Sigma's behalf in this regard when it admits that "Focus Camera received brand registry rights from Sigma." *See* Affidavit of Gabriel Simony (hereinafter "Simony Aff."), Dkt. No. 22, at ¶ 16.

Neither Digital Village nor GM Photo is an authorized dealer of Sigma products, and no Sigma products sold by them carry the manufacturer's warranty. *See* Kirzner Decl., Ex. A. As such, Plaintiff's "Sigma" products are materially different than those products sold by authorized dealers. *Id.*

In late 2022, Focus Camera became aware that Digital Village was selling Sigma products on listings on the same page as authorized dealers of Sigma products. Cmpl. ¶ 16.[1] Digital Village's listings did not disclose the lack of warranty, and instead seemed to try to hide the fact by "hijacking" the authentic goods' listings and directing purchasers to Amazon's and Sigma's warranty policies. Kirzner Decl. ¶ 15.  Focus Camera informed Sigma of the sales, and Sigma confirmed that Digital Village was not authorized. Kirzner Decl. ¶ 14; Kirzner Decl., Ex. A. Accordingly, as was established over the course of Sigma and Focus Camera's relationship, Sigma directed, and Focus Camera filed, notices under Amazon's trademark/counterfeit page on October 6, 2022 and October 11, 2022.  Kirzner Decl. ¶¶ 18-19.

Over two months after the subject notices were filed with Amazon, Plaintiff now brings this litigation and motion for "urgent" and extraordinary relief, without any showing of damages

---

[1] Citations to "Cmpl." refer to Plaintiff's Complaint, filed December 7, 2022 (DE 1).

whatsoever. In fact, Plaintiff's Motion and Complaint, as well as the documents and arguments made therein, nearly admit to Plaintiff's Lanham Act violations. First, in relation to what Plaintiff refers to the "red herring warranty issues," Plaintiff seeks to hide behind Amazon's policies as though they supersede the Lanham Act, stating: "Amazon discloses to buyers that manufacturer warranties may not apply in all cases" then quotes some uncited language purportedly from Amazon. Cmpl. ¶ 53. However, the Complaint does not—because it cannot—allege that Sigma products sold by Plaintiff carry the same warranties as those sold by authorized Sigma dealers. As will be discussed in greater detail below, this allegation does not provide a legal defense for Plaintiff's sale of materially different goods; instead, it admits it.

Next, Plaintiff attaches an invoice which purports to show a transaction with Circuit City Corporation, in which GM Photo purchased 393 Sigma products, purportedly ordered on October 3, 2022. *See* Dkt. No. 22-1. Plaintiff seems to argue that because Circuit City Corporation is purportedly an authorized Sigma dealer, this invoice is somehow proof that it was not selling infringing grey goods or counterfeit goods in conjunction with its Amazon listings. But this invoice raises more questions than it answers.

First, the invoice makes no mention of Digital Village; rather, it references GM Photo LLC and non-party Digital Trading LLC (in the email address), leaving questions open to whether the Digital Village storefront was, in fact, the end seller of these products. Second, the price of the goods—typically a tell-tale sign of counterfeit and grey market goods—are redacted without sufficient explanation.

Third, as stated above, Digital Village utilizes Amazon's FBA program, which requires a vendor to ship the products to an Amazon fulfillment center and for the fulfillment center to process and sort the goods before offering them for sale on the platform. Thus, the order would

need to be shipped to GM Photo in Linden, New Jersey as indicated on the invoice, then shipped to Amazon fulfillment, and then sorted by Amazon before the goods purchased from Circuit City could be made available for sale on Amazon.

Given that the industry standard for Amazon FBA processing is normally at least one week, coupled with Plaintiff's need to receive the goods and then re-ship them to Amazon prior to processing, it is impossible that this October 3, 2022 invoice could have covered the listings reported on Amazon FBA on October 6, 2022 and October 11, 2022 when Focus Camera's notices to Amazon were sent. Kirzner Decl. ¶¶ 13, 18-19. Accordingly, Focus Camera has reason to believe that Digital Village was selling these products well before the date of the invoice. As such, the invoice is yet another admission that GM Photo was selling unauthorized Sigma products.

Finally, a brief outline of Amazon's procedure for handling trademark/counterfeit claims is warranted to contextualize the deception of Plaintiff's claims. Amazon has a vested interest in allowing as many vendors on its platform as practicable, so the burdens of overcoming a trademark/counterfeit claim are low–much lower than the burden to show that a parties' conduct is lawful. In essence, when Amazon receives a counterfeit claim, they simply put a flag, or potentially a hold, on the listing and request that the seller "prove," either through invoices or contracts, that the goods are authorized and not counterfeit. Kirzner Decl. ¶ 21. Once completed, if the documentation satisfies Amazon's minimal requirements, the listing is reinstated. Kirzner Decl. ¶ 21. Therefore, if Plaintiff were selling non-infringing goods in the eyes of Amazon, this entire action would be moot, as Plaintiff would not have to worry about its storefront being suspended or deactivated.

Indeed, in the last year alone, Focus Camera—an *authorized dealer*—has been subjected to between 20 and 30 trademark/counterfeit claims for its storefront, and simply provided the

necessary documentation and continued business as usual.  Kirzner Decl. ¶ 22. As it appears that Digital Village's sales were either never removed or have been reinstated, Plaintiff presumably used the same dubious Circuit City invoice referenced above to satisfy Amazon's process, and therefore Plaintiff avoided any consequences for its unauthorized listings.

As will be discussed in further detail below, the foregoing facts lead to three undeniable conclusions. First, the speculative harms alluded to by Plaintiff simply do not exist; second, Plaintiff has no viable cause of action against Defendants; and third, Plaintiff is infringing on Sigma's trademark rights by deceptively selling materially different goods.

## **LEGAL STANDARD**

A preliminary injunction is "an extraordinary remedy never awarded as a right." *Winter v. Natural Res. Defense Council, Inc.,* 555 U.S. 7, 24 (2008).  To warrant this extraordinary measure of relief, Plaintiff bears a heavy burden of establishing that: (1) that there is a likelihood of irreparable harm for which remedies at law would be inadequate; (2) that it is likely to succeed on the merits; (3) that the balance of hardships tips in its favor; and (4) that the public interest would not be disserved by issuing preliminary relief. *Id.* at 20.

Already a high standard, it may be heightened further if "(i) an injunction would alter, rather than maintain, the status quo, or (ii) an injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995). In such a case, a plaintiff must show "a clear or substantial likelihood of success on the merits" at step two. *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc., 883 F.3d 32, 37 (2d Cir. 2018)* (quoting *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012); *see also Tom Doherty Assocs.*, 60 F.3d at 35.

**ARGUMENT**

A.     The Court is Without Subject Matter Jurisdiction

Plaintiff has not adequately alleged diversity jurisdiction. This Court therefore lacks subject matter jurisdiction and cannot enter an enforceable injunction. For purposes of establishing diversity jurisdiction, the matter in controversy must exceed "the sum or value of $75,000, exclusive of interest and costs" and be between, *inter alia*, "citizens of different States." 28 U.S.C. § 1332(a). Diversity jurisdiction "requires 'complete diversity,' i.e. all plaintiffs must be citizens of states diverse from those of all defendants." *Finnegan v. Long Island Power Auth.*, 409 F.Supp.3d 91, 95 (E.D.N.Y. 2019) (quoting *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117-18 (2d Cir. 2014)).

An individual's citizenship is determined by his domicile, which is "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (quoting *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998)). "[A] limited liability company is a citizen of each state in which its individual members are citizens." *U.S. Liab. Ins. Co. v. M Remodeling Corp.*, 444 F.Supp.3d 408, 409 (E.D.N.Y. 2020) (citing *Castillo Grand, LLC v. Sheraton Operating Corp.*, 719 F.3d 120, 122 (2d Cir. 2013)).

In pleading the citizenship of a limited liability company, like Plaintiff, "the identity and citizenship of *each member*" of the company must be specifically alleged. *Id*. at 410 (emphasis added). Here, Plaintiff fails to plead facts to adequately demonstrate the citizenship of the parties because Plaintiff fails to specifically allege the identity and citizenship of each of Plaintiff's members. *See U.S. Liab. Ins. Co.*, 444 F.Supp.3d at 409-10. The affidavit supporting Plaintiff's

motion for injunctive relief likewise fails to make the requisite showing of diversity. *See generally* Simony Aff.

Plaintiff therefore fails to properly establish subject matter jurisdiction and Plaintiff's motion for a preliminary injunction should be denied on this basis alone. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 60 (2d Cir. 2016) (holding allegation that an LLC "is a citizen of a different state" is deficient "because it contains no allegation as to the identity or citizenship" of the members).

   B.   <u>Plaintiff is Seeking a Mandatory Injunction, and is Subject to a Higher Burden</u>

The line between a mandatory injunction—one which seeks to alter the status quo—and one that does not can be subtle.  While in some circumstances, this Circuit has defined a mandatory injunction as requiring "some positive act" (*see e.g*, *Mastrovincenzo v. City of New York*, 435 F.3d 78, 89 (2d Cir. 2006)), this Circuit has also defined the status quo as "the last actual peaceable uncontested status which preceded the pending controversy." *N. Am. Soccer League LLC v. United States Soccer Federation, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018).  Accordingly, injunctive relief can alter the status quo by prohibiting an act if such an act was legally within the non-moving party's rights prior to the pending controversy.

Here, Plaintiff is asking the Court to impose drastic, unnecessary measures against Focus Camera. Plaintiff seeks an order directing Defendants to "cease making false counterfeit claims to Amazon or any other seller/marketplace" and to "take no acts to shut down GM Photo's account on Amazon."  As a preliminary matter, the form and wording of the requested relief make the scope and effect of this potential injunction impossible to interpret or enforce.  For example, the request to prohibit any "false" claims presumes falsity—or, at best, predetermines the outcome of legitimate claims.  The claims subject to this action are the perfect example of why this would be

unenforceable.  Plaintiff believes these claims to be false due to a lack of understanding that goods sold without warranty are materially different, thus infringing; while Defendants believe these claims to have been made in good faith and not false. Another example is the undefined phrase of "take no acts to shut GM Photos account on Amazon." This proposed prohibition could be construed as a request to prohibit competition, as providing authorized and genuine products along with superior service and shipping could ultimately put GM Photo out of business and shut down its account. Lastly, the undefined term "any other seller/marketplace" would seem to stretch the request to a global reach, making enforcement of any rights impossible.

Even leaving aside these massive drafting issues, Plaintiff is, in essence, asking this Court to handicap, and take away the ability of a third-party, i.e. Focus Camera, to enforce intellectual property rights. As stated herein, Focus Camera maintains a relationship with Sigma. Sigma is the owner of the Sigma trademark and sells its goods through a network of authorized dealers. Only goods purchased through those dealers carry a four-year manufacturer's warranty.  As a matter of law, goods sold without that warranty are materially different from those sold with that warranty. Accordingly, Sigma has a Lanham Act claim against those unauthorized sellers. Over the course of Sigma and Focus Camera's relationship, Sigma has expressly directed Focus Camera to enforce these rights on the Amazon platform, and in essence, assigned its Amazon "Brand Registry" "policing" to Focus Camera in order to address the multitudes of infringing/counterfeit listings that arise on the platform.  Focus Camera's ability and right to do so was and is the status quo, and granting the relief requested in the Motion would impermissibly alter it. Accordingly, Plaintiff is obligated to satisfy the heightened standard and show "a clear or substantial likelihood of success on the merits." *See N. Am. Soccer League*, 883 F.3d at 37 (internal quotations and citation omitted); *Tom Doherty Assocs.*, 60 F.3d at 35. Plaintiff's Motion fails to do so.

C. <u>Plaintiff is not only unlikely to succeed on the merits of any of the claims, but is likely to lose on Defendants' pending motion to dismiss under Fed. R. Civ. P. 12.</u>

As set forth in Defendants' pending motion for judgment on the pleadings, the Complaint should be dismissed in its entirety. Plaintiff's tortious interference claims fail because Plaintiff does not allege that Defendants utilized any wrongful means to achieve a wrongful purpose. Rather, the pleadings demonstrate that Defendants had an objectively good faith belief that Plaintiff's sales of Sigma products on Amazon were unauthorized and infringing. Based on that belief, Focus Camera submitted notices to Amazon in accordance with Amazon's stated policies. Amazon reviewed the notices and took its own independent action following an investigation. Merely informing a party of suspected infringement is *per se* nonactionable as tortious interference with business relations. Moreover, Plaintiff's tortious interference with contract claim fails because Plaintiff does not identify any breach of contract induced by Defendants' alleged actions.

Plaintiff's defamation and trade libel claims are even more dubious. First, the claims are barred entirely by New York's recently amended anti-SLAPP statute. The law requires Plaintiff to plead actual malice and it has not done so. Second, all of the alleged statements—to the extent they are sufficiently identified in the Complaint—are substantially true and/or mere opinion. The disputed statements merely informed Amazon of Defendants' belief that Plaintiff's unauthorized sales violated intellectual property law. Whether Plaintiff's unauthorized sales of Sigma goods meet the definition of "counterfeit" is a legal determination, not a factual one upon which a defamation claim may be premised. Third, Plaintiff fails to plead any special damages, which is fatal to these causes of action. Any one of the foregoing grounds, standing alone, would be sufficient to dismiss the Complaint. Taken together, there is simply no basis for Plaintiff's defamation and trade libel claims to survive the pleading stage.

Finally, Plaintiff's state law causes of action for deceptive trade practices and unfair competition are plainly insufficient. Plaintiff does not allege any significant public harm as required under New York General Business Law § 349, and none of Plaintiff's factual allegations fall within the categories of unfair competition recognized by existing precedent. In sum, the Complaint cannot survive scrutiny and Plaintiff therefore cannot demonstrate likelihood of success on the merits.

    a.   *GM Photo is not likely to succeed on the merits of its claim for tortious interference with business advantage or relationships (Count I).*

A claim of tortious interference requires a showing of "interference with business relations existing between the [claimant] and a third party, either with the sole purpose of harming the [claimant] or by means that are dishonest, unfair or in any other way improper." *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 269 (2d Cir. 2008) (citation omitted). If there are "no allegations in the complaint capable of supporting a reasonable inference that any . . . defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means, then the claim should be dismissed." *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 107 (2d Cir. 2009) (citation omitted).

As to the first prong, if Defendants' alleged "'interference [was] intended, at least in part, to advance [their] own competing interests,' then there was no 'wrongful purpose.'" *RFP, LLC v. SCVNGR, Inc.*, 788 F. Supp. 2d 191, 196 (S.D.N.Y. 2011) (alterations in original). Here, Plaintiff affirmatively alleges that Defendants' actions were motivated by a desire to advance their own "pecuniary benefits," thereby vitiating the claim. *See* Cmpl. ¶¶ 27, 47; *see also id*. ¶ 96 (alleging that Defendants' actions were "done to eliminate [Plaintiff's] lawful competition with Defendant").

Moreover, the evidence adduced to date reflects that Focus Camera had no intent to interfere with any relationship between Plaintiff and Amazon. Rather, any actions undertaken by Focus Camera were based upon instructions and information provided by Sigma designed to protect consumers from unauthorized goods and had nothing to do with the relationship between Plaintiff and Amazon.

With respect to the second prong, "[t]he wrongful means requirement is similarly demanding." *SCVNGR, Inc.*, 788 F. Supp. 2d at 197. Plaintiff must plead acts of "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure." *Scutti Enters. v. Park Place Entm't Corp.*, 322 F.3d 211, 216 (2d Cir. 2003) (citation omitted). At most, Plaintiff alleges that Defendants made misrepresentations to Amazon indicating that Plaintiff's Sigma product listings constituted intellectual property violations. *See* Cmpl. ¶ 64. But this is insufficient to state a claim.

As a matter of law in this Circuit, a "counterfeit" good may be any good marked with a trademark and distributed without the manufacturers' consent—even if the good did, in fact, originate from the manufacturer. *See El Greco Leather Prods. Co. v. Shoe World, Inc.*, 806 F.2d 392, 396 (2d Cir. 1986). Here, Plaintiff is not an authorized dealer of Sigma products and Plaintiff freely admits it is a purveyor of "grey market" goods, i.e. goods that Plaintiff did not source directly from Sigma and which were not delivered to consumers with a full manufacturer's warranty. *See* Cmpl. ¶¶ 19, 53, 58.

"[T]he sale of grey goods violates the Lanham Act when the goods (1) are not intended to be sold in the United States, and (2) are materially different from the authentic goods that are authorized for sale in the United States market." *Novartis Animal Health US, Inc. v. LM Connelly & Sons, Pty Ltd.*, 2005 U.S. Dist. LEXIS 15214, *11 (S.D.N.Y. July 20, 2005). Plaintiff's goods

were materially different because they were not covered by a manufacturer's warranty when sold by Plaintiff.  Cmpl. ¶¶ 53, 58; CC ¶ 26 and accompanying exhibits. Accordingly, Plaintiff's goods were counterfeits—as that legal term of art is used. *See Dan-Foam A/S & Tempur-Pedic, Inc. v. Brand Named Beds, LLC*, 500 F. Supp. 2d 296, 314 (S.D.N.Y. 2007) (difference in warranty protection considered material); *see also Energizer Brands, LLC v. My BAttery Supplier, LLC* 529 F. Supp. 3d 57, 62 (S.D.N.Y. 2021) (internal quotations omitted) ("Although the term 'gray market goods' typically refers to goods manufactured outside the United States which are imported without the consent of the trademark holder, courts in this Circuit have applied the legal standards from gray market goods cases to claims involving trademarked domestic goods sold by unauthorized retailers.").

At a minimum, Defendants had a good faith basis to accuse Plaintiff of trafficking in infringing grey market goods. Upon encountering unauthorized Sigma goods on Amazon, it was a reasonable presumption that the goods were illicitly imported or counterfeited. Defendants allegedly reported their suspicions to Amazon, and Amazon made its own determination following its own investigation. Cmpl. ¶ 24. Defendants' "actions taken to inform others that they may be participating in infringement of [an intellectual property] right, and might face legal consequences for that infringement, are not tortious interference." *SCVNGR*, 788 F. Supp. 2d at 197-98 (citing *Shapiro & Son Bedspread Corp. v. Royal Mills Assocs.*, 764 F.2d 69, 75 (2d Cir. 1985)). Plaintiff's claim therefore fails.

Finally, even if Plaintiff could allege wrongful means, Defendants' actions were not the proximate cause of any harm. Amazon—and Amazon alone—is responsible for determining infringement and removing a third-party seller from its platform. Notably, Plaintiff does not claim that its storefront was permanently suspended by Amazon or that Plaintiff lost any specific,

identifiable sales during a period of suspension. Rather, Plaintiff alleges in a conclusory manner, without factual support, that it was "indeed injured: Amazon suspended GM Photo from selling Sigma products, causing lost sales, harming GM Photo, and benefitting Defendants." *See* Plaintiff's Memorandum of Law at 7. But there is no evidence of any loss associated with the suspension, nor of harm to GM Photo, nor of any particular benefit to Focus Camera. Instead, Plaintiff acknowledges that its Amazon account was reactivated on November 14, 2022, and Plaintiff never faced any consequences from its sale of unauthorized goods. *See* Simony Aff. ¶ 27. While Plaintiff baldly alleges that "the "injury . . . exists despite Amazon's re-activation of the suspended listings," Plaintiff never defines what the injury is. *See* Plaintiff's Memorandum of Law at 7.  Instead, Plaintiff claims "the false claims have sullied GM Photo's good name and standing with Amazon," but that is both speculative and insufficient to state a claim. *Id*.

Where, as here, the alleged interference did not cause specific "injury to the business relationship," Plaintiff's claim cannot survive the pleadings. *Advanced Glob. Tech. LLC v. Sirius Satellite Radio, Inc.,* 15 Misc. 3d 776, 779, 836 N.Y.S.2d 807 (Sup. Ct. N.Y. Cty. Mar. 8, 2007). In other words, because Defendants' actions caused only an alleged "injury to reputation," a claim for tortious interference cannot lie and should be dismissed. *Dobies v. Brefka*, 273 A.D.2d 776, 778, 710 N.Y.S.2d 438 (3rd Dept. 2000); *see also Deer Consumer Prods., Inc. v. Little Grp.*, 2012 NY Slip Op 52157(U), *15, 37 Misc. 3d 1224(A) (Sup. Ct. N.Y. Cty. Nov. 15, 2012).

Finally, Plaintiff's reliance upon *Josie Maran Cosms., LLC v. Shefa Grp. LLC, No.* 20cv3702, 2022 WL 3586746, at *8 (E.D.N.Y. Aug. 22, 2022) is misplaced. In *Shefa*, the Court determined a party was injured by losses during an intervening period of suspension. However, that was based upon the Court's identification of a proven loss. Here, Plaintiff has wholly failed

to demonstrate any loss, and asks this Court to grant injunctive relief based upon barebones insinuations about hypothetical loss.

In fact, the Simony Affidavit definitively confirms Plaintiff's failure to prove damages when it premises its request for injunctive relief on hypothetical future harm, stating "the submission of false counterfeit claims…**could result** in temporary or permanent suspension," and "[i]f GM Photo were prohibitedd from selling products on Amazon…it **would be** catastrophic to our business." Simony Aff. ¶¶ 28, 30 (emphasis added). Speculative, remote, or future injury is not the province of injunctive relief. *Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983).

> b. *GM Photo is not likely to succeed on the merits of its claim for tortious interference with Contract (Count II).*

To state a claim for tortious interference with a contract a plaintiff must plead and prove "the existence of [a] valid contract with a third party, defendant's knowledge of that contract, defendant's intentional and improper procuring of a breach, and damages." *White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 8 N.Y.3d 422, 426 (2007). Here, Plaintiff fails to plead that Amazon (or anyone else) breached its contract with Plaintiff—let alone that Defendants procured the breach. For the same reason, Plaintiff fails to allege that it suffered any damages, i.e. if no contracts have been breached, Plaintiff suffered no harm. To be sure, the Complaint fails to allege any damages flowing from a breach of contract by Amazon—and Plaintiff tellingly has not sued Amazon for breach of contract.

Moreover, Amazon expressly reserves the right to bar anyone from using its platform. Therefore, to the extent Plaintiff enjoys any contractual relationship with Amazon at all, such contract is terminable at will. *See* Dkt No. 22-9 at ¶ 3. The law differentiates between interference with a fully enforceable existing contract and interference with a prospective, terminable at will, or voidable contract. As the New York Court of Appeals has stated: "interference with

performance of voidable contracts should be treated the same as interference with contracts terminable at will for purposes of imposing liability in tort, and that both fall in the same category with interference with prospective contractual relations." *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 192 (1980). Therefore, the second cause of action also fails for the same reasons as the first cause of action, i.e. failure to plead wrongful purpose or wrongful means.

      *c.  GM Photo is not likely to succeed on the merits of its claims for commercial defamation and trade libel (Counts III and IV).*

"To state a claim for trade libel, a plaintiff must adequately plead "(1) falsity of the statement, (2) publication to a third person, (3) malice (express or implied), and (4) [ ] special damages." *Angio-Medical Corp. v. Eli Lilly & Co*., 720 F. Supp. 269, 274 (S.D.N.Y. 1989). Likewise, a defamation claims requires showing a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at minimum, a negligence standard, which causes either special harm or constitutes defamation *per se*. *See Dillon v. City of New York*, 261 A.D.2d 34, 38, 704 N.Y.S.2d 1 (1st Dept. 1999).

Here, Plaintiff's defamation and libel claims are subject to immediate dismissal for at least three reasons. First, they are barred by New York Civil Rights Law § 76-A for failure to plead actual malice. Second, the allegedly defamatory statements are true, substantially true, or mere opinion. Third, Plaintiff fails to plead special damages.

First, "[t]o show actual malice, the plaintiff must allege sufficient facts from which to infer that the defendant knew the alleged defamatory statement was false when he made it or recklessly disregarded whether it was false or not." *Kerik v. Tacopina*, 64 F. Supp. 3d 542, 571 (S.D.N.Y. 2014) (citing *Kipper v. NYP Holdings Co.*, 12 N.Y.3d 348, 912 N.E.2d 26, 29, 884 N.Y.S.2d 194 (N.Y. 2009) (in turn citing *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)). The Supreme

Court has defined "reckless disregard" as requiring that the defendant "entertained serious [subjective] doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731, (1968).

Here, the Complaint does not allege that Defendants published any intellectual property notices to Amazon with knowledge of their falsity or that Defendants had any subjective reason to doubt the truth of the alleged complaints. Rather, the pleadings demonstrate that Plaintiff is not an authorized Sigma dealer and sells goods that are materially different from authorized goods without disclosing that fact to consumers.

Second, the disputed statements are, at minimum, substantially true. At most, Plaintiff alleges that Defendants expressed its concerns about the propriety of Plaintiff's unauthorized Sigma listings to Amazon in order to enable Amazon to investigate and determine whether the listings violated Amazon's intellectual property policies. Defendants' objectively reasonable, fact-based rationale for filing those notices vitiates any claim of defamation.

Furthermore, even if the Court were to find that the disputed statements are not substantially true, the statements are nevertheless non-actionable opinion or hyperbole. New York law provides "absolute protection of opinions." *Cummings v. City of New York*, No. 19-CV-7723 (CM)(OTW), 2020 U.S. Dist. LEXIS 31572, 2020 WL 882335, at *20 (S.D.N.Y. Feb. 24, 2020). Whether a statement constitutes opinion is a question for the court. *Id*. (citing *Chau v. Lewis*, 771 F.3d 118, 128 (2d Cir. 2014)).

The infringement complaints to Amazon disclosed the basis of the opinion, i.e. Plaintiff's status as an unauthorized dealer and the lack of warranty accompanying the goods. Against that backdrop, no claim may lie. "[A] statement on matters of public concern must be provable as false before there can be liability under state defamation law..." *Milkovich v. Lorain Journal Co.*, 497

U.S. 1, 19-20 (1990). Here, whether Plaintiff's unauthorized sales of Sigma goods meet the definition of "counterfeit" is a legal determination, potentially subject to differing legal opinions—but not a factual one upon which a defamation claim might be premised. Thus, Plaintiff's defamation and libel claims fail on this basis as well.

Third, trade libel requires pleading and proof of special damages. *Angio–Med. Corp.*, 720 F.Supp. at 274 (citation omitted). Here, Plaintiff states, without elaboration, that it has suffered special damages in the form of a loss of customers. *See* Cmpl. ¶¶ 98, 105. But this does not suffice to state a claim. *See Drug Rsch. Corp. v. Curtis Pub. Co.*, 7 N.Y.2d 435, 440–41 (1960) ("if the special damage was a loss of customers, * * * the persons who ceased to be customers, or who refused to purchase, must be named * * *. (I)f they are not named, no cause of action is stated"); *see also* Fed. R. Civ. P. 9(g).

> d.  *GM Photo is not likely to succeed on the merits of its claim for deceptive acts or trade practices in violation of N.Y. General Business Law § 349 (Count V).*

To state a claim under N.Y. General Business Law § 349 Plaintiff must allege conduct that has 'significant ramifications for the public at large.'" *RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.,* No. 14CV6294-LTS-HBP, 2015 U.S. Dist. LEXIS 111823, *4 (S.D.N.Y. Aug. 24, 2015). For a claim to be cognizable under these provisions, there must be some "specific and substantial injury to the public interest…" *Nomination Di Antonio E Paolo Gensini S.N.C. v. H.E.R. Accessories Ltd.*, 07 Civ. 6959 (DAB), 2009 U.S. Dist. LEXIS 117368, at *8 (S.D.N.Y. Dec. 14, 2009) (emphasis omitted). Plaintiff has not articulated any basis for a finding that the broader public was significantly harmed merely because one of Plaintiff's unauthorized listings was temporarily suspended by Amazon.

> *e.   GM Photo is not likely to succeed on the merits of its claim for common law unfair competition  (Count VI).*

Finally, Plaintiff unsuccessfully attempts to plead a cause of action for common law unfair competition.  "New York recognizes seven bases for a claim of unfair competition.  They are: (1) monopoly; (2) restraint of trade; (3) trade secrets; (4) trademark or trade name infringement, (5) palming off; (6) misappropriation; and (7) false labeling or advertising." *Poznanski v. Wang*, 2009 N.Y. Misc. LEXIS 6076, *27-*28 (N.Y. Sup. Ct. Aug. 25, 2009) (citing 2 NY PJI3d 3:58, at 525 (2007)). Plaintiff has not alleged facts sufficient to support any of the seven enumerated categories of common law unfair competition. Rather, Plaintiff's unfair competition argument is tantamount to a kitchen sink of all other causes of action—all of which independently fail.

D.   <u>Plaintiff Fails to Demonstrate Irreparable Harm</u>

A showing of irreparable harm is "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered." *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 221 (E.D.N.Y. 2013) (quoting *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002); *Bell & Howell Mamiya Co. v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir. 1983)). A plaintiff must establish that threatened injury is "neither remote nor speculative, but actual and imminent." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005). The Motion (and the Complaint) completely disregard this element; Plaintiff continuously speaks in conjectures and hypotheticals—what could be and what may be, but not what is or what is imminent. The conjectures and hypotheticals are the predicate to Plaintiff's tenuous argument that Defendants' threat to shut down Plaintiff's Amazon account (by rightfully reporting infringing sales of Sigma's goods) might cause irreparable harm.

Plaintiff argues that this "Circuit recognizes that 'a threatened loss of goodwill and customers, both present and potential, [cannot] be rectified by monetary damages' and thus warrants injunctive relief." *See* Plaintiff's Memorandum of Law at 18. But this is a bold miscasting of the finding in *Jacobson & Co. v. Armstrong Cork Co.*, 548 F.2d 438 (2d Cir. 1977), from which Plaintiff omits the crucial phrase of the very sentence quoted, which reads in full: "We agree that Jacobson presented ample evidence to show a threatened loss of goodwill and customers, both present and potential, neither of which could be rectified by monetary damages." *Jacobson & Co.*, 548 F.2d at 445. Here, there is no evidence whatsoever, let alone "ample evidence," that any loss of goodwill is imminent. In fact, the only paragraph supporting this contention, found at page 18 of Plaintiff's Memorandum, consists entirely of conclusory statements that are not even found in the supporting Affidavit of Gabriel Simony.

To compound Plaintiff's failures, the "harms" resulting in each of these speculative statements could, indeed, be measured in monetary damages. As Plaintiff itself states, it is a "longtime seller on Amazon," Simony Decl. ¶ 22, and it can place a value on the inventory of the allegedly suspended listings, Simony Decl. ¶ 25. It is, therefore, feasible to show any resulting lost sales as a result for any suspensions by Amazon. Furthermore, if Plaintiff were to be deactivated permanently, it would be the result of Amazon finding that Plaintiff's products are, in fact, infringing.

To touch briefly on another aspect of the irreparable harm element required for injunctive relief – that it must be "actual and imminent"—Plaintiff admits that its loses are hypothetical and speculative, stating that "the submission of false counterfeit claims…**could result** in temporary or permanent suspension," and "[i]f GM Photo were prohibited from selling products on Amazon…it **would be** catastrophic to our business." Simony Aff. ¶¶ 28, 30 (emphasis added). "Irreparable

harm must be shown to be imminent, not remote or speculative, and the injury must be such that it cannot be fully remedied by monetary damages." *Bowman v. Campbell*, 850 F. Supp. 144, 144 (N.D.N.Y. 1994). Plaintiff's Motion therefore fails on this basis alone.

Finally, the remainder of the cases relied upon by Plaintiff do not support its speculative position. *In re Alert Holdings, Inc.*, 148 B.R. 194 (1992) involved an injunction to prevent certain defendants "from surreptitiously stealing, through false claims and advertising, accounts which the defendants previously sold," *In re Alert Holdings, Inc.* at 197, and had nothing to do with lost sales or good will based on an availability to sell to products. *Quezada v. BP Prod. N. Am., Inc.*, 2006 WL 3837720 (2006) involved the potential harms of a party operating a business using the other party's trademark, making it more akin to what a potential claim against Plaintiff by Sigma would look like than to Plaintiff's current claim against Defendants. And last, in *Xelus Inc. v. Servigistics, Inc.*, 371 F. Supp. 2d 387 (W.D.N.Y. 2005), the court found that the damages resulting from the potential loss of specifically identified contracts that were actually being negotiated would be immeasurable, and thus, irreparable. There are no analogous allegations or facts present in the instant case.

E.   A Balancing of the Equities Favors Denial of the Injunction

The balance of the equities tips decidedly in favor of denying the Motion.  By casting Defendants' valid infringement claims as false, Plaintiff is seeking to remove Defendants' (and by virtue of their relationship, Sigma's) right to enforce Sigma's trademark rights on Amazon and "any other seller/marketplace." The hardships this would cause to Defendants (and Sigma, which is not here to defend itself due to Plaintiff's choice to not bring a claim against it) far outweighs any speculative harms that Plaintiff might incur should the relief be denied.

Beginning with the harms to Defendants and Sigma, entering such a broad injunction would hamstring both from enforcing trademark rights on any platform, as it would seem Plaintiff's definition of "false claims" is markedly different from the relevant case law. The ultimate outcome on Plaintiff's proposed injunction would be non-authorized sellers riddling the Amazon marketplace, tarnishing Sigma's brand and goodwill, and leaving Sigma and Focus Camera in fear of reporting other instances of potential infringement. Likewise, entering the injunction would incentive unauthorized sellers, like Plaintiff, to forego quality control altogether knowing that Sigma and Focus Camera are left questioning whether or not they can report them.

Meanwhile, Plaintiff is not at risk of any harm at all. As stated above, it is commonplace for sellers on Amazon to contend with intellectual property notices, and Amazon has a lenient and efficient procedure for resolving them. Once a complaint is received, Amazon simply asks for documentation to verify the goods.  This process can be as simple as providing Amazon with the invoice for the goods, upon which Amazon will close the complaint ticket or reinstate the listing. Again, it is noteworthy that due to Amazon's interest in maintaining as many seller accounts and listings as possible, this bar is much lower than what would be required at law. Upon information and belief, that is exactly what happened here: Plaintiff showed Amazon the Circuit City invoices submitted in support of the Motion and has been selling products ever since. Thus, without the injunctive relief requested, the worst that could happen to Plaintiff if a claim is filed with Amazon is that Plaintiff will have to validate the source of its goods. In other words, so long as Plaintiff is actually selling non-infringing goods, it faces no risk of permanent suspension.

Accordingly, because Plaintiff will be unaffected by a denial of the injunction as long as it is only selling legitimate goods (as it claims), while Defendants' rights will be gravely affected by granting the injunction, the balance of the equities clearly favors denial of the Motion.

F. <u>The Public Interest is Served by Encouraging, Not Limiting, Intellectual Property Enforcement</u>

It is truly incredible that Plaintiff—a party selling products without a warranty next to those with warranties without disclosing it to consumers—begins its argument by stating "the public has an interest in not being deceived." Plaintiff is correct, yet Plaintiff is the party deceiving the public, and entering the requested relief would remove the most efficient checks and balances to Plaintiff's doing so.

The public interest is more appropriately served by manufacturers and authorized dealers finding and policing the sale of illegitimate, counterfeit, and unauthorized products, as it is the consumer that suffers the consequences of mistakenly purchasing these items. Accordingly, the public interest would not be served by affirming this conduct through the entry of an injunction; rather, the public interest would be openly harmed by the proposed injunction.

G. <u>The Rule 65(C) Bond Requirement Should Not Be Waived</u>

Plaintiff attempts to argue that granting the injunction—which would undermine Defendants' ability to enforce its own, Sigma's, and various other brands' rights—would cause "no prejudice."  This demonstrates an utter lack of understanding of the issues brands face fighting grey market and counterfeit goods on Amazon and other marketplaces. The ability to report and quickly resolve the sale of non-authentic goods is crucial to maintaining the integrity and quality of a brands' goods. It is not hyperbole to state that chilling this enforcement ability and emboldening illegitimate sellers on Amazon could lead to a proliferation of knock-off goods on the Amazon platform and losses in the millions.

Accordingly, Defendants respectfully request that should the Court entertain granting injunctive relief, that it hold an evidentiary hearing to determine the adequate and appropriate

amount for a bond. Defendants maintain that such a bond should be quite significant given the broad injunctive relief contemplated.

## <u>CONCLUSION</u>

Accordingly, for the foregoing reasons, as well as the reasons set forth in Defendants' Motion for Judgment on the Pleadings, it is respectfully requested that the Court deny Plaintiff's Motion for Preliminary Injunction in its entirety.

Dated: New York, New York
       February 9, 2023

Yours, etc.

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP

By: _____
       Stephen J. Barrett
       Jura C. Zibas
       150 East 42nd Street
       New York, New York 10017-5639
       (212) 490-3000
       Stephen.Barrett@wilsonelser.com
       Jura.Zibas@wilsonelser.com
       File No.: 12741.00151

       *Attorneys for Defendants*