UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                                         :
GM PHOTO, LLC,                                           :
                                                         :
                                   Plaintiff,            :
                                                         :          22-CV-10339 (VSB)
                   - against -                           :
                                                         :          **OPINION & ORDER**
FOCUS CAMERA, INC., *et al.*,                            :
                                                         :
                                   Defendants.  :
                                                         :
-------------------------------------------------------X

<u>Appearances</u>:

Gabriel Adam Berg
Robins Kaplan LLP
New York, NY
*and*
Alejandro Miyar
Berger Singerman LLP
Miami, FL
*Counsel for Plaintiff*

Stephen James Barrett
Jura Christine Zibas
Wilson Elser Moskowitz Edelman & Dicker LLP
New York, NY
*Counsel for Defendants*

<u>VERNON S. BRODERICK, United States District Judge</u>:

      Before me are Defendants' motion to dismiss Plaintiff's amended complaint, (Doc. 53),

and Plaintiff's motion to dismiss Defendants' counterclaim asserted in the answer to the original

complaint, (Doc. 36).  For the following reasons, Defendants' motion to dismiss the amended

complaint is GRANTED IN PART and DENIED IN PART, and Plaintiff's motion to dismiss

Defendants' counterclaim is GRANTED.

## I.    __Factual Background__[1]

Plaintiff GM Photo, Inc. ("GM") operates the Digital Village storefront on Amazon.com. (Doc. 52 ("Am. Compl.") ¶ 16.)  Through Digital Village, GM sells photography equipment, including high-end Sigma brand single-lens reflex camera lenses that retail for approximately $600 to $1,200.  (*Id*. ¶¶ 17–19, 31, 40.)  GM asserts that its Sigma lenses are genuine and almost impossible to counterfeit due to the inherent complexities in their parts and circuitry, and asserts that it obtains the lenses from a Sigma-authorized distributor.  (*Id*. ¶¶ 19–21, 48.)

Defendant Focus Camera, Inc. ("Focus") is a competitor of GM that also sells Sigma lenses on Amazon.com and in Focus brick-and-mortar stores.  (Am. Compl. ¶ 22.)  Defendant Michael Silberstein ("Silberstein") is the Chief Executive Officer ("CEO") of Focus.  (*Id*. ¶ 12.)  Defendant Cassie Kirzner ("Kirzner") is Focus' Director of Amazon Sales.  (*Id*. ¶ 13.)

GM alleges that in October 2022, prior to the holiday shopping season, Defendants conspired to de-list certain of GM's Amazon listings.  (*See* Am. Compl. ¶ 23, 26, 44.)  To do that, GM alleges that Defendants falsely reported to Amazon that GM's Sigma lenses were counterfeit, causing Amazon's infringement reporting system to de-list the reported products and depriving GM of revenue it otherwise would have earned.  (*See id*. ¶¶ 3, 25–27.)   GM believes that "Defendants have made the same false and libelous claims against other sellers on Amazon during the 2022 holiday buying season because there are 'too many sellers' of Sigma products on Amazon."  (*Id*. ¶ 44.)

Plaintiff alleges that "Kirzner, . . . together with . . . Silberstein and unknown Focus Camera actors," made the first false report to Amazon on October 9, 2022.  (Am. Compl. ¶¶ 23,

---

[1] The facts in this section are drawn from Plaintiff's amended complaint, (Doc. 52 ("Am. Compl."), which I assume to be true for purposes of the motion to dismiss for failure to state a claim, *see Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  My recitation of these facts does not constitute factual findings and should not be construed as such.

27.)  This report related to a Sigma 24-70mm lens that retails for $900 to $1,200.  (*Id*. ¶ 31.)  GM received an email entitled "Notice:  Policy Warning" from Amazon on October 9, 2022 at 12:14 a.m. "outlining Defendants' misconduct and stating that GM Photo's inventory could be destroyed."  (*Id*. ¶ 30.)  Later that day, GM emailed Kirzner, informing her "that GM Photo's Amazon-listed items are brand new and authentic models purchased through authorized channels" (*id*. ¶ 33), and that Defendants "were wrongfully slandering GM Photos' Company and damaging GM Photo's Amazon seller account", (*id*. ¶ 34).  Neither Kirzner nor anyone else at Focus responded.  (*Id*. ¶ 35.)

On October 17, 2022 at 1:27 a.m., Plaintiff received a second "Policy Warning" email from Amazon, this time regarding a Sigma telephoto lens that retails for $850 to $1,100.  (Am. Compl. ¶ 36–38.)  Hours later, Plaintiff received a third "Policy Warning" email, which related to a Sigma 18-35mm lens that retails for $600 to $800.  (*Id*. ¶¶ 39–41.)  GM alleges that it received these warnings because Focus knowingly submitted a false reports to Amazon that the Sigma lenses were counterfeit.  (*See id*. ¶¶ 38, 41, 50.)

Each time Focus reported one of GM's Sigma lens listings as counterfeit, Amazon suspended the reported listing, preventing GM from selling the reported lens.  (*See* Am. Compl. ¶¶ 26, 43.)  Thus, following the first Policy Warning email, on October 11, 2022, GM sent a letter to Focus and Silberstein requesting that Focus immediately withdraw its counterfeit report.  (*Id*. ¶ 58.)  Silberstein responded on October 24, 2022, stating that Focus reported GM's listings because they permitted "customers to buy products with the wrong description and no warranty."  (*Id*. ¶¶ 58, 62.)  Silberstein further stated that "if I send this letter up to Amazon's headquarters, it might shut the entire [] GM Photo account down completely."  (*Id*. ¶ 62.)  GM pleads that

Amazon warns its customers that seller or manufacturer warranties may not apply in all cases to certain goods purchased on Amazon.  (*Id.* ¶ 63.)

As a result of Focus' false counterfeit reports and the suspension of GM's listings from Amazon, GM alleges that it lost revenue and sustained damage to its reputation.  (*Id.* ¶¶ 26, 43, 72.)  GM also alleges that Focus' actions harmed consumers who, because of GM's suspension, could not purchase Sigma lenses from GM and therefore had fewer sellers from which to purchase Sigma lenses.  (*Id.*)

## II.    <u>Procedural History</u>

GM initiated this action on December 7, 2022 by filing a complaint.  (Doc. 1.)  The same day, GM filed a motion for a preliminary injunction.  (Doc. 3.)  On December 15, 2022, I issued a show-cause order on the motion.  (Doc. 12.)  Before the show-cause hearing, however, the parties submitted a joint stipulation that I approved, obviating the need for a preliminary injunction to issue.  (Doc. 48.)

Defendants appeared, (Doc. 24), and on January 17, 2023 filed an answer to the complaint, asserting a counterclaim against GM, (Doc. 33.)  On February 7, 2023, Plaintiff filed a motion to dismiss the counterclaim, (Doc. 36), along with a supporting memorandum of law, (Doc. 37 ("Countercl. Mem.").)  On February 9, 2023, Defendants filed a motion for judgment on the pleadings as to Plaintiff's claims in the initial complaint.  (Doc. 38.)  On February 21, 2023, Defendants filed a memorandum of law in opposition to Plaintiff's motion to dismiss the counterclaim.  (Doc. 47 ("Countercl. Opp'n").)  Plaintiff filed a reply in support of its motion to dismiss the counterclaim on February 28, 2023.  (Doc. 51 ("Countercl. Reply").)

Rather than respond to the motion for judgment on the pleadings, on March 3, 2023 Plaintiff filed the operative Amended Complaint.  (Doc. 52.)  Plaintiff asserts six claims against

Focus, Silberstein, and Kirzner:  (1) tortious interference with GM's prospective economic advantage or business relationships, (the "First Cause of Action"), (*id*. ¶¶ 74–86); (2) tortious interference with GM's contractual relationship with Amazon, (the "Second Cause of Action"), (*id*. ¶¶ 87–102); (3) commercial defamation, (the "Third Cause of Action"),  (*id*. ¶¶ 103–114); (4) trade libel, (the "Fourth Cause of Action"), (*id*. ¶¶ 115–121); (5) deceptive acts or trade practices in violation of Section 349 of the New York General Business Law, (the "Fifth Cause of Action"), (*id*. ¶¶ 122–128); and (6) unfair competition, (the "Sixth Cause of Action"), (*id*. ¶¶ 129–135).

Defendants moved to dismiss the Amended Complaint on March 16, 2023, (Doc. 53), filing an accompanying memorandum of law the same day, (Doc. 54 ("Mem.")).  Plaintiff filed an opposition brief on March 30, 2023.  (Doc. 55 ("Opp'n).)  Defendants replied on April 12, 2023.  (Doc. 58 ("Reply").)

On October 4, 2023, I granted Defendants' motion to stay discovery pending the resolution of the motion to dismiss.  (Doc. 66.)  On March 31, 2025, I denied Defendants' motion for judgment on the pleadings as moot in light of the filing of the amended complaint.  (Doc. 69.)

### III.    <u>Legal Standard</u>

Defendants move to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).  "A motion to dismiss is designed to test the legal sufficiency of the complaint."  *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996) (internal quotation marks omitted).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The court takes the well-pled facts in the complaint as true, draws all reasonable inferences in the plaintiff's favor, and ignores any "legal conclusions" among the

factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is proper when "the allegations in a complaint, however true, could not raise a claim of entitlement to relief" as a matter of law. *Twombly*, 550 U.S. at 558. A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

### IV.    <u>Discussion</u>

Defendants move to dismiss all of Plaintiff's claims in the Amended Complaint under Rule 12(b)(6). For the reasons detailed below, I conclude that Plaintiff fails to state a claim for trade libel (Fourth Cause of Action), tortious interference with contract (Second Cause of Action), Section 349 deceptive practices (Fifth Cause of Action), and unfair competition (Sixth Cause of Action). Defendants' motion with regard to these claims is GRANTED and the claims are DISMISSED. Because I find that Plaintiff does state a claim for defamation (Third Cause of Action) and for tortious interference with business relations (First Cause of Action), Defendants' motion to dismiss these claims is DENIED.

Plaintiff also move to dismiss Defendants' counterclaim, asserted under Section 70-a of the New York Civil Rights Law. Because I find that Section 70-a does not apply in federal court, Plaintiff's motion to dismiss the counterclaim is GRANTED.

### A.    *Commercial Defamation and Trade Libel*

I first address Plaintiff's defamation claims, styled as "commercial defamation" and "trade libel," and labeled as Plaintiff's Third and Fourth Causes of Action, respectively. (*See* Am. Compl. ¶¶ 103–121.) These claims are legally related but distinct causes of action under New York law. Both causes of action include the elements that the defendant made a false

statement, and the false statement caused the plaintiff to suffer an injury.  *See, e.g.*, *Chau v. Lewis*, 771 F.3d 118, 126–27 (2d Cir. 2014) (reciting elements of a commercial defamation claim); *Bilinski v. Keith Haring Found., Inc.*, 96 F. Supp. 3d 35, 51 (S.D.N.Y. 2015) (reciting elements of trade libel claim).  The commercial defamation tort applies when the false "statement impugns the basic integrity or creditworthiness of a business."  *Ruder & Finn Inc. v. Seaboard Sur. Co.*, 422 N.E.2d 518, 522 (N.Y. 1981).  By contrast, the trade libel tort[2] applies when the statement is "libelous of the product."  *Drug Research Corp. v. Curtis Pub. Co.*, 166 N.E.2d 319, 321 (N.Y. 1960); *see also Ruder & Finn*, 422 N.E.2d at 522 (distinguishing between the two theories).  Critically, to proceed on a product-disparagement theory for trade libel, the plaintiff must plead "malice and special damages."  *Ruder & Finn*, 422 N.E.2d at 522.  "[F]alse statements attacking the integrity or credit of a business," however, are "per se" actionable, and a plaintiff proceeding under a business-integrity theory of defamation need not plead special damages.  *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 59 (2d Cir. 2002) (citing *Ruder & Finn*, 422 N.E.2d at 522).[3]

I proceed by first evaluating Defendants' argument that Plaintiff has not alleged special damages because doing so clarifies the scope of Plaintiff's claim.  I conclude that Plaintiff only plausibly alleges a claim for commercial defamation, and therefore dismiss any claim for product disparagement or trade libel.  I then consider and reject Defendants' remaining arguments that: (1) GM has not stated the allegedly false statements with particularity; (2) Defendants'

---

[2] The "trade libel" tort is also known as "injurious falsehood" or "product disparagement."  44 N.Y. Jur. 2d Defamation and Privacy § 281 (Nov. 2024 update).

[3] In *Chau v. Lewis*, the Second Circuit described a single "libel" tort under New York law, requiring proof of either "special damages or *per se* actionability."  771 F.3d 118, 127 (citing *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 176 (2d Cir. 2000)).

statements are true; (3) Defendants' statements are privileged; and (4) Section 76-a of the New York Civil Rights Law bars any defamation claim.

### 1. Special Damages

Defendants argue that Plaintiff's trade libel claim must be dismissed because the Amended Complaint does not allege special damages.  (Mem. 21–22; Reply 7.)  As discussed, GM must plead "malice and special damages" for any trade libel claim based on product disparagement to survive a motion to dismiss.  *Ruder & Finn*, 422 N.E.2d at 522.  In this regard, however, Plaintiff's Amended Complaint blurs the distinction between a business-disparagement claim and a product-disparagement claim.  Under the "commercial defamation" heading, Plaintiff pleads that "Defendants have knowingly and maliciously made false statements of and concerning [] GM Photo, specifically that GM photo sells counterfeit goods," and that the statements "denigrating the quality of GM Photo's goods and services were malicious."  (Am. Compl. ¶¶ 104, 109.)  These references to Plaintiff's "goods" and to Defendants' "malic[e]," *id.*, seem to invoke the product-disparagement theory.  *See Drug Research*, 166 N.E.2d at 321.  However—also under the "commercial defamation" heading—Plaintiff states that "Defendants' statements are defamatory *per se* because they maliciously impugn GM Photo's business reputation."  (Am. Compl. ¶ 108.)  Similarly, under the "trade libel" heading, GM pleads that "Defendants have knowingly and maliciously made false statements about GM Photo's business of a kind calculated to prevent others from dealing with GM Photo," and that the "statements are libelous because they maliciously impugn GM Photo's business reputation and practices."  (*Id.* ¶¶ 116–17.)  These statements are consistent with the business-disparagement theory, under which Plaintiff may state a claim without pleading malice or special damages.  *See Fendi USA*, 314 F.3d at 59 (citing *Ruder & Finn*, 422 N.E.2d at 522).

Plaintiff does not seriously argue that it suffered "special damages" as part of its trade libel claim aside from citing two conclusory statements in the complaint.  (Am. Compl. ¶ 113 ("GM Photo has suffered special damages associated with its reputation and standing on the Amazon marketplace and as a seller subject to Amazon's oversight and review."); *id*. ¶ 120 (same); Opp'n 11 (emphasizing that "special damages need not be proved as a direct accusation" (internal quotation marks omitted).)  *Cf. Fendi USA*, 314 F.3d at 59 (explaining that special damages "require[s] specific itemization").  Instead, Plaintiff contends that it need not plead special damages to state a trade libel claim because "Defendants' false statements plainly impeach GM Photo's business methods" and therefore "constitute defamation per se."  (Opp'n 19.)  However, Plaintiff misapprehends the law, since Defamation "per se" refers to the business-defamation tort, which is "distinct" from the product-disparagement tort that Plaintiff has labeled as "trade libel."  *Fendi USA*, 314 F.3d at 59; *see also Drug Research*, 166 N.E.2d at 321; 44 N.Y. Jur. 2d Defamation and Privacy § 281 (Nov. 2024 update).  The cases on which Plaintiff relies, (*see* Opp'n 19), relate to the business defamation tort, not the trade libel tort.  *See Angio-Med. Corp. v. Eli Lilly & Co.*, 720 F. Supp. 269, 274 (S.D.N.Y. 1989) (explaining that where "the disparaging statements impeach the business methods or integrity of the plaintiff himself, special damages need not be proved," and "[t]he action would then qualify as slander per se instead of trade libel"); *Kesner v. Dow Jones & Co., Inc.*, 515 F. Supp. 3d 149, 171 (S.D.N.Y. 2021) (referring to "defamation *per se*"); *Fossil Grp., Inc. v. Angel Seller LLC*, No. 20-CV-2441, 2021 WL 5409605, at *13 (E.D.N.Y. Aug. 27, 2021) (same), *report and recommendation adopted*, 2021 WL 4520030 (E.D.N.Y. Oct. 4, 2021).  By relying only on the "per se" defamation theory and not sufficiently pleading special damages, Plaintiff fails to plausibly allege a separate claim

for trade libel or product disparagement.  Therefore, I GRANT Defendants' motion to dismiss the trade libel claim.

### 2.  Particularity

Defendants argue that Plaintiff's complaint insufficiently describes the allegedly defamatory statements.  (Mem. 13.)  To state a defamation claim, the complaint must "adequately identif[y] the purported communication" and indicate "who made the communication, when it was made, and to whom it was communicated."  *Biomed Pharms., Inc. v. Oxford Health Plans (N.Y.), Inc.*, 775 F. Supp. 2d 730, 739 (S.D.N.Y. 2011) (internal quotation marks omitted).

Plaintiff's Amended Complaint meets this standard.  It alleges that on or about October 9 and 17, 2022, Kirzner—at the behest of Silberman and to benefit Focus—submitted false reports to Amazon's infringement reporting system.  (Am. Compl. ¶¶ 25, 30, 36, 39.)  These allegations provide Defendants "sufficient notice of the communications complained of to enable [Defendants] to defend [themselves]," which is the rationale behind the particularity requirement.  *Biomed*, 775 F. Supp. 2d at 738 (internal quotation marks omitted).  Defendants' motion to dismiss on this ground is DENIED.

### 3.  Falsity and Opinion

To state a defamation claim, the challenged statement must be false, and it must be a statement of "fact[]—that is, not opinion."  *Chau v. Lewis*, 771 F.3d 118, 126–27 (2d Cir. 2014).  A statement that is "substantially true, as when the overall gist of the challenged statement is true," is not actionably false even if the statement is not "completely true."  *Id*. at 130 (internal quotation marks and emphasis omitted).  A statement is "likely to be characterized as fact" rather

than opinion if it is "readily understood by the reader to have a precise, unambiguous and definite meaning and can be objectively characterized as true or false." *Id*. at 128.

Plaintiff sufficiently alleges that Defendants made false statements of fact.  The Amended Complaint pleads that Kirzner, "under penalty of perjury," reported to Amazon that GM's Sigma lenses were counterfeit—that is, that each of GM's listings did not really offer a Sigma-manufactured lens, but were "fake goods being passed off as an original."  (Am. Compl. ¶¶ 25, 54; *see also id*. ¶¶ 29, 31, 37, 40.)  Plaintiff substantiates this allegation by noting, *inter alia*, that Defendants would have known GM's goods were not counterfeit because single-lens reflex camera lenses are nearly impossible to counterfeit, (*id*. ¶ 48), and that Defendants in fact did know that the GM's lenses were not counterfeit, as Silberman later admitted that Defendants reported GM's listings because they the lenses were not warrantied, not because they were counterfeit, (*id*. ¶ 62).  Courts in this Circuit have concluded that similar allegations—including that a defendant filed false Amazon counterfeit reports—are sufficient to withstand motions to dismiss in this context.  *See YCF Trading Inc. v. Skullcandy, Inc.*, No. 24-CV-2540, 2025 WL 929714, at *10–14 (E.D.N.Y. Mar. 27, 2025); *Fossil Grp., Inc. v. Angel Seller LLC*, No. 20-CV-2441, 2022 WL 9447259, at *4 (E.D.N.Y. Oct. 14, 2022); *GeigTech East Bay LLC v. Lutron Elecs. Co., Inc.*, No. 18-CV-5290, 2019 WL 1768965, at *9 (S.D.N.Y. Apr. 4, 2019); *Beauty Beauty USA, Inc. v. Chin Hong Luo*, No. 11-CV-5349, 2011 WL 4952658, at *1 (S.D.N.Y. Oct. 13, 2011).

My conclusion would be the same even if I consider[4] Defendants' submission—attached only to their reply brief—that the Amazon counterfeit reporting form requires a complainant to

---

[4] It is unclear whether I may consider this submission in deciding the motion.  On the one hand, even though the Amended Complaint includes a link to the reporting form, (Am Compl. ¶ 28), a link to an extrinsic document is generally insufficient to incorporate it to a complaint, *see Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004).  On the other hand, Defendants' submission is consistent with the form described in *Thimes Sols., Inc. v. TP-Link USA*

affirm (1) "under penalty of perjury" that the factual basis of the complaint is true; and (2) their "good faith belief" that the reported content violates intellectual property rights. (Doc. 58-3 at 4.) The court in *Fossil Group* concluded that a defamation claim based on a "bad faith" Amazon counterfeit report can survive a motion to dismiss. 2022 WL 9447259, at *4. In other words, the falsity alleged is not whether GM's goods were counterfeit or not, but whether Defendants knew that its counterfeit reports were illegitimate. Read in the light most favorable to Plaintiff, the Amended Complaint plausibly alleges Defendants knew that their complaints to Amazon were false, thus raising a factual question regarding the Defendants' intent. *Cf. Ricciuti v. New York City Transit Auth.*, 70 F. Supp. 2d 300, 339 (S.D.N.Y. 1999) ("[M]alice, like intent, is a state of mind, and when in dispute is traditionally left to the jury to decide, on the basis of the evidence, direct or circumstantial, from which an individual's relevant state of mind may or may not be inferred.").

Defendants' other arguments also fail. First, Defendants contend that a counterfeit report to Amazon is an opinion as a matter of law, relying on *CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205 (S.D.N.Y. 2023) and *Thimes Sols., Inc. v. TP-Link USA Corp.*, No. 2:19-CV-10374, 2022 WL 17818334, at *3–4 (C.D. Cal. Nov. 3, 2022). These cases are inapposite and readily distinguishable. In *CDC Newburgh*, the plaintiff alleged—as here—that the defendants falsely submitted counterfeit reports to Amazon in order to have the plaintiff's products de-listed. 692 F. Supp. 3d at 216–17. The court dismissed the plaintiff's defamation claim because the actual counterfeit reports that the defendants submitted stated that the defendants believed that the plaintiff's products were counterfeit because the defendant manufacturer had not authorized

---

*Corp.*, No. 2:19-CV-10374, 2022 WL 17818334, at *4 (C.D. Cal. Nov. 3, 2022), a*ff'd*, No. 22-56176, 2024 WL 1328194 (9th Cir. Mar. 28, 2024), and thus I may perhaps take judicial notice of the contents of the form. In any event, I address the document above without resolving the issue.

the plaintiff to resell them.[5]  *Id*. at 222.  In other words, in *CDC Newburgh* the court looked at defendants' actual reports[6] and found that they expressed an opinion.  Here, without Defendants' actual reports, I am unable to do the same.  *Thimes* is a summary-judgment decision, so the court similarly drew on the factual record before it—which indicated that the defendant manufacturer did not authorize the plaintiff to sell its products—to conclude a reasonable jury could not find that the defendant manufacturer lacked a good faith belief that the plaintiff's products were infringing its intellectual property.  2022 WL 17818334, at *1, *4.

The instant case is similar to *Fossil Grp., Inc. v. Angel Seller LLC*, 2022 WL 9447259.  There, a defendant company contended that the plaintiffs "ha[d] reason to know" that the reported defendant company was "not engaged in selling counterfeit products," such that it was reasonable to infer that the counterfeit reports were submitted by the plaintiffs "in bad faith."  2022 WL 9447259, at *4.  Similarly, here, Plaintiff's allegations provide a reasonable basis to infer that Defendants knew that GM's listings were not counterfeit, but that Defendants reported GM's listings anyway, perhaps because they knew that doing so would likely result in the removal of GM's products from Amazon during the lucrative holiday shopping season.  (*See* Am. Compl. ¶¶ 3, 25, 44.)

---

[5] The reports at issue in *CDC Newburgh* contained one of the following statements:

> (1) "Please note only CaseMotions and Sportique are authorized by [Defendant] to sell on Amazon.  [Plaintiffs] are not authorized nor are they buying direct from [Defendant] therefore we conclude this product is counterfeit."; and (2) "Please know [Defendant] has authorized only Sportique and CaseMotions to sell on Amazon.com outside of [Defendant] selling direct.  [Defendant] has double checked their records and have no data to support [Plaintiffs] acquired [Defendant's] product through a legitimate channel therefore we can safely assume they are selling counterfeit products."

*CDC Newburgh*, 692 F. Supp. 3d at 222.

[6] The plaintiff in *CDC Newburgh* "d[id] not dispute" the defendants' contention that their counterfeit reports were "integral to its Amended Complaint" and therefore could be considered at the motion-to-dismiss stage.  692 F. Supp. 3d at 222.

Defendants also argue that its complaints about GM to Amazon were true or "substantially true" as a matter of law.  (Mem. 18; *see also id*. 8).  The premise of this argument is that GM "is a purveyor of 'grey market' goods," (*id*. 8), a phrase which refers to the sale of genuine goods by a merchant other than an authorized reseller, *see Dan-Foam A/S v. Brand Named Beds, LLC*, 500 F. Supp. 2d 296, 308–09 (S.D.N.Y. 2007).  Defendants assert that the law in this Circuit is that a "grey market" good is a "counterfeit" good, and that since GM's Sigma lenses were grey market goods, it was substantially true to report them as counterfeit.  (Mem. 8, 18.)  This argument fails because the allegation that GM was an unauthorized retailer appears nowhere in the Amended Complaint, which is silent on Sigma's authorization of GM's sales.  (*See* Am. Compl. ¶¶ 20–21.)  In any case, Defendants would not prevail even if the Amended Complaint admitted that Sigma did not authorize GM's sales.  The court in *Thimes* considered an inverse argument to Defendants'—that the reporter's statements were "provably false because there is a long line of cases denying trademark infringement claims against 'gray market' resellers."  2022 WL 17818334, at *4.  Judge Blumenfeld correctly observed that the argument "misse[d] the point," because the relevant question was whether the defendants subjectively believed that their counterfeit reports were false, and no record evidence could support such a finding.  *Id*.  As discussed, Plaintiff has plausibly alleged that Defendants knew that their counterfeit reports were false.  Therefore, the motion to dismiss on this ground is DENIED.

### 4.  Common-Interest Privilege

Defendants next invoke New York's common-interest privilege.  Common-interest privilege immunizes a defendant from a defamation claim based on "a communication made by one person to another upon a subject in which both have an interest," unless the plaintiff has shown "malice, spite, knowledge of falsehood of the statement or reckless disregard for the

truth." *Fossil*, 2022 WL 9447259, at *4 (quoting *Conti v. Doe*, 535 F. Supp. 3d 257, 275–76, 279–80 (S.D.N.Y. 2021)). As Plaintiff alleges that Defendants knew their counterfeit reports were false, any common-interest privilege does not apply. As I find above, Plaintiff's allegations provide a reasonable basis to infer that Defendants knew that GM's listings were not counterfeit, but that Defendants reported GM's listings anyway, thereby plausibly alleging bad faith. *Cf. id.* (denying motion to dismiss based on common-interest privilege because the complainant's counterfeit reports were submitted "in bad faith"). Defendants' motion to dismiss on this ground is DENIED.

### 5. Section 76-a of the New York Civil Rights Law

Defendants' remaining argument is based on Section 76-a of the New York Civil Rights Law. Section 76-a is meant to "deter actions filed to punish or harass a defendant for participating in public life"; these actions are known as "strategic lawsuits against public participation," so the law is called an "anti-SLAPP statute." *Watson v. NY Doe 1*, No. 19-CV-533, 2023 WL 6540662, at *3 (S.D.N.Y. Oct. 6, 2023) (quoting *Carroll v. Trump*, 590 F. Supp. 3d 575, 580 (S.D.N.Y. 2022)). When Section 76-a applies, it imposes "an actual malice requirement" on defamation claims—a plaintiff may only recover damages if he or she establishes "'by clear and convincing evidence that any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of whether it was false.'" *Palin v. New York Times Co.*, 510 F. Supp. 3d 21, 25 (S.D.N.Y. 2020) (quoting N.Y. Civil Rights Law § 76-a(2)). The statute applies to claims based upon:

> (1) any communication in a place open to the public or a public forum in connection with an issue of public interest; or
>
> (2) any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition.

*Id.* (quoting N.Y. Civil Rights Law § 76-a(1)(a)).  The statute further provides that the term

"'[p]ublic interest' shall be construed broadly, and shall mean any subject other than a purely

private matter."  N.Y. Civil Rights Law § 76-a(1)(d).

As a preliminary matter, aside from citing the subsection of the statute that provides for a

broad construction of the term "public interest," Defendants do not advance any argument or cite

to any legal authority for the proposition that an Amazon counterfeit report is a communication

in the "public interest."  (*See* Mem. 16.)  Indeed, Defendants abandon this argument on reply,

(*see generally* Reply (failing to discuss Section 76-a)), and I therefore need not consider it, *see,*

*e.g.*, *BlackRock Allocation Target Shares: Series S. Portfolio v. Wells Fargo Bank, Nat'l Ass'n*,

247 F. Supp. 3d 377, 408 n.14 (S.D.N.Y. 2017) ("Defendant abandoned this argument on reply,

and so the Court will consider it no further in the following section.").  Further, despite the

statute's broad-construction directive, it is hard to see how the challenged speech—counterfeit

reports to Amazon that are not publicly accessible—falls within the scope of Section 76-a, which

concerns communications in a "public forum" or that are "part of a larger narrative."  *Watson*,

2023 WL 6540662, at *4 (internal quotation marks omitted); *cf. Coleman v. Grand*, 523 F. Supp.

3d 244, 265–66 (E.D.N.Y. 2021) (concluding that "Facebook is a public forum within the

meaning of New York's anti-SLAPP law" given that posts on a "public Facebook page" can

"generat[e] dozens of comments" and are "accessible to anyone who consents to Facebook's

Terms" (internal quotation marks omitted)).  Defendants' failure to explain why the anti-SLAPP

statute applies in the first place precludes dismissal on this ground.  *Cf. Olsen v. Sherry*

*Netherland, Inc.*, No. 20-CV-103, 2022 WL 6561378, at *8 (S.D.N.Y. Jan. 21, 2022) (finding that

"New York's anti-SLAPP statute [did] not apply" because the defendants had "not cited to any

authority to support their contention that" the disputed statements concerned "a matter of public interest"), *report and recommendation adopted*, 2022 WL 4592999 (S.D.N.Y. Sept. 30, 2022).

Even if I assume that the anti-SLAPP statute did apply to the statements, Plaintiff has pled "actual malice." *Palin*, 510 F. Supp. 3d at 25. As previously explained, GM alleges that Defendants knew that its Amazon counterfeit reports were false. (*See* Am. Compl. ¶¶ 3, 25, 44, 48, 62.) Since the complaint thus plausibly states that Defendants submitted each counterfeit report "with knowledge of its falsity," the anti-SLAPP statute would not bar the defamation claim. N.Y. Civil Rights Law § 76-a(2).

Defendants' motion to dismiss on this ground is DENIED.

### B.    *Tortious Interference*

Plaintiff asserts that Defendants' counterfeit reports constituted tortious interference with business relations and tortious interference with contract, respectively the First and Second Causes of Actions. Under New York law, to state a business-relations claim, "a plaintiff must show that '(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship.'" *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015) (quoting *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 547 F.3d 115, 132 (2d Cir. 2008)). To state a contract claim, "a plaintiff must 'demonstrate [(1)] the existence of a valid contract, [(2)] the defendant's knowledge of the contract's existence, [(3)] that the defendant intentionally procured a contract breach, and [(4)] the resulting damages to the plaintiff.'" *Ithaca Cap. Invs. I S.A. v. Trump Panama Hotel Mgmt. LLC*, 450 F. Supp. 3d 358, 372 (S.D.N.Y. 2020) (quoting *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 F. App'x 102, 104 (2d Cir. 2012)).

I first address a preliminary matter regarding the scope of Plaintiff's tortious interference claims vis-à-vis its defamation claim.  Next, I address whether Plaintiff has established the wrongful-means element of the business-relations claim, and whether Plaintiff has established the breach element of the contract claim.  Finally, I address the causation element, which is common to both claims.

### 1. Tortious Inference and Defamation

For the first time on reply, (s*ee* Reply 8; *see generally* Mem. (asserting other grounds for dismissal of tortious interference claim)), Defendants argue that under New York law, a tortious interference claim may not duplicate a defamation claim.  New York defines the defamation tort "in terms of the injury, damage to reputation, and not in terms of the manner in which the injury is accomplished." *Jain v. Sec. Indus. & Fin. Markets Ass'n*, No. 08-CV-6463, 2009 WL 3166684, at *9 (S.D.N.Y. Sept. 28, 2009) (quoting *Morrison v. Nat'l Broad. Co.*, 227 N.E.2d 572, 574 (N.Y. 1967)) (cleaned up).  Thus, when a plaintiff pleads a defamation claim, he may not also plead a tortious interference claim for which "the entire injury complained of by plaintiff flows from the effect on his reputation." *Id*. (internal quotation marks omitted); *see also Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012) (affirming district court's dismissal of duplicative claims).  However, the Second Circuit has explained that allegations that a defendant submitted false Amazon intellectual property reports sound in tortious interference, as opposed to defamation, "where the gravamen of the complaint is economic injury, rather than merely reputational harm." *Glob. Supplies NY, Inc. v. Electrolux Home Prod., Inc.*, No. 21-674, 2022 WL 815795, at *2 (2d Cir. Mar. 18, 2022) (summary order) (internal quotation marks omitted).

Here, the issue is more complicated because Plaintiff alleges it suffered both reputational and economic damages as a result of Defendants' tortious interference.  (*See* Am. Compl. ¶ 83 (pleading that GM's damages for business-relations claim include "lost revenues, sales, customers, or profits; lost opportunity costs; loss of goodwill; or brand or reputational damages"); *id*. ¶ 99 (pleading the same damages for the contract claim).)  Because Defendants raised the duplicate-claim argument for the first time on reply, Plaintiff could not respond to it.  Of course, this is why courts generally do not consider arguments submitted for the first time in reply briefs.  *See, e.g.*, *Mathew v. Walt Disney Co.*, No. 13-CV-3930, 2014 WL 1795847, at *3 (S.D.N.Y. May 5, 2014) (explaining that "arguments raised for the first time on reply need not be considered because the opposing party has not had an opportunity to respond to such arguments" and collecting cases).  For this reason, I decline to dismiss any of Plaintiff's tortious interference claims based on this rationale, even though Plaintiff pleads that it suffered reputational injuries.

### 2.  Business-Relations:  Wrongful Means

Defendants argue that GM has not pled the wrongful-means element of the business-relations tort.  I disagree because the Amended Complaint alleges that Defendants knowingly submitted false counterfeit reports to Amazon.  To establish the wrongful-means element, the "the plaintiff must show that defendant's conduct was not 'lawful' but 'more culpable,'" implying "that, as a general rule, the defendant's conduct must amount to a crime or an independent tort."  *Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1003 (N.Y. 2004).  Accordingly, "'[w]rongful means' includes defamation."  *Editor's Pick Luxury LLC v. Red Points Sols. SL*, No. 22-CV-7463, 2023 WL 6385993, at *4 (S.D.N.Y. Sept. 29, 2023).  Further, the Second Circuit has suggested that a tortious interference claim may lie when a defendant "utterly lacked belief in the merit[s]" of an intellectual property lawsuit, *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247,

263 (2d Cir. 2015), that a defendant "intended only to harass" the plaintiff in filing a lawsuit, *id.*, or that the defendant made a false statement "motivated by an attempt to deceive," *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 547 F.3d 115, 134 (2d Cir. 2008). The New York Court of Appeals has explained that wrongful means may include "fraud or misrepresentation" and "civil suits and criminal prosecutions." *Carvel*, 818 N.E.2d at 1104 (quoting *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 406 N.E.2d 445, 449 (N.Y. 1980)).

Whether described as defamation, fraud, misrepresentation, or the filing of "frivolous, objectively unreasonable, or patently meritless" claims, *16 Casa Duse*, 791 F.3d at 263, I conclude that Defendants' conduct fits the wrongful means element of this tort. Plaintiff alleges that Defendants knew that filing false counterfeit reports would de-list GM's Sigma lenses, robbing GM of revenue. (Am. Compl. ¶ 25.) Further, after Plaintiff objected—and Defendants admitted their problem with GM's lenses was not that they were counterfeit, but that they were not warrantied—Defendants did not back down but instead threatened to escalate their reports to "shut the entire []GM Photo account down completely." (*Id.* ¶ 62.) Although Defendants argue that Plaintiff has not shown that they acted with the "sole purpose" of harming GM, that pleading requirement is an "exception" inapplicable here, as Plaintiff relies on the "independent tort" method of proving wrongful means. *Carvel*, 818 N.E.2d at 1103 (internal quotation marks omitted). Additionally, I have already rejected Defendants' argument that Plaintiff was selling "grey goods," so the counterfeit reports were not false. *Supra* § IV.A.3. Plaintiff has established the wrongful means element of this tort.

### 3. Contract: Breach

Plaintiff's tortious-interference-with-contract claim is based on its contract with Amazon. (Am. Compl. ¶ 89.) Although the Amended Complaint only contains excerpts from the contract,

Plaintiff submitted it to support its motion for a preliminary injunction.  (*See* Doc. 6-9 ("BSA").)

I may consider this submission in deciding the motion to dismiss because the contract "contain[s]

obligations upon which the plaintiff's [claim] stands or falls."  *Global Network Commc'ns, Inc.

v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006).  In pleading its contract-interference claim,

Plaintiff quotes Term 6.3 of its contract with Amazon, which states that Amazon will defend and

indemnify GM against "any third-party Claim arising from or related to . . . allegations that the

operation of an Amazon Site infringes or misappropriates that third party's intellectual property

rights."  (Am. Compl. ¶ 89.)  The Amended Complaint also pleads that Defendants' actions "are

within the definition of a Claim."  (*Id.* ¶ 92.)  Plaintiff's theory is thus that the contract specified

that Amazon would defend and indemnify GM against third-party intellectual-property claims, so

that Defendants' false counterfeit reports caused Amazon to breach the indemnity clause, as

Amazon did not indemnify or defend GM.  (*See* Opp'n 8.)

Plaintiff's theory must fail because the contract does not obligate Amazon to defend or

indemnify a third-party's claim against GM relating to GM's alleged intellectual property

violation.  In fact, Term 6.1(b) of the contract, (BSA § 6.1(b)), states that GM agrees to

indemnify Amazon against such a claim.  *See, e.g.*, *Annie Oakley Enters., Inc. v. Amazon.com,

Inc.*, 559 F. Supp. 3d 780, 791 (S.D. Ind. 2021) ("[T]he Business Solutions Agreement requires

the third-party sellers to indemnify Amazon for losses resulting from the sellers' non-compliance

with applicable laws or any actual or alleged infringement by the seller on the intellectual

property rights of another."); *Amazon.com Inc. v. Tang*, No. 2:23-CV-898, 2024 WL 3521528, at

*5 (W.D. Wash. July 24, 2024) ("The BSA requires the seller to defend, indemnify, and hold

Amazon harmless against any claims or losses arising from the seller's actual or alleged

infringement of any Intellectual Property Rights." (internal quotation marks omitted)).  It would

make little sense for the contract to both require GM to indemnify Amazon for intellectual-property claims against GM and require Amazon to do the reverse.

Rather, in this context, Term 6.3, on which Plaintiff relies, means that Amazon will indemnify GM against Amazon's "operation of an Amazon site." (BSA § 6.3.) The contract later defines "Amazon Site" to include, as relevant here, "the URL www.amazon.com." (*Id*. at 11, 13.) *Cf. Carlin v. Bezos*, No. 14-CV-2406, 2015 WL 12803608, at *4 (E.D. Pa. June 11, 2015) (noting that a similar Amazon agreement "broadly defines 'Amazon Sites' to include 'websites operated by [Amazon or] its affiliates'"), *aff'd*, 649 F. App'x 181 (3d Cir. 2016). In other words, the plain text of the contract shows that Amazon did not breach it by failing to indemnify or defend GM against Defendants' actions. Thus, Plaintiff fails to establish the breach element of its interference claim.

Therefore, Defendants' motion to dismiss the tortious-interference-with-contract claim is GRANTED.

### 4.  Causation

Defendants argue that I should dismiss the business-relations interference claim because Plaintiff has not established that its wrongful conduct caused GM to suffer any injuries. *See 16 Casa Duse*, 791 F.3d at 261 (reciting causation element of the tort). Not so. Plaintiff plausibly alleges that Amazon "suspended"—*i.e.*, took away the ability for customers to purchase—GM's products representing inventory worth "approximately $1.5 million" because of Defendants' false counterfeit reports. (Am. Compl. ¶ 43.) *Cf. Glob. Supplies*, 2022 WL 815795, at *2 (explaining that the plaintiff alleged that the defendant's infringement "complaint had the specific effect of causing Amazon to terminate its business relationship with" the plaintiff). I find this allegation sufficient to sustain the tortious-interference claim at this stage of the case.

Defendants contend that Amazon investigated its counterfeit reports before deciding to suspend the listings, and that therefore Amazon played a superseding role in the chain of causation.  (*See* Mem. 10.)  This may ultimately prove to be the case; however, the Amended Complaint does not contain allegations that support Defendants' argument.  "Issues of proximate cause" generally "require a factual determination that cannot be made at the motion to dismiss stage." *Kallas v. G & P Agency, Inc.*, No. 22-CV-8256, 2024 WL 4593640, at *4 (S.D.N.Y. Oct. 28, 2024) (citing *Trahan v. Lazar*, 457 F. Supp. 3d 323, 352 (S.D.N.Y. 2020)).  In support of their position, Defendants cite to *NOCO Company v. OJ Commerce, LLC*, in which a panel of the Sixth Circuit concluded that Amazon's independent investigation of a third-party's infringement complaint was a superseding cause between the defendant's infringement complaint and the suspension of the plaintiff's Amazon account.  35 F.4th 475, 484 (6th Cir. 2022).  Unlike *NOCO*, which was decided at summary judgment, *see id*. at 481, here I may only rely on the allegations in the Amended Complaint, and the Amended Complaint makes no mention of any independent Amazon investigation.  Instead, the Amended Complaint pleads that Amazon de-listed GM's products because of Defendants' counterfeit complaints.  That is sufficient at this stage of the litigation to state a claim.

Defendants' motion to dismiss the tortious interference with business relations claim is DENIED.

### C.    *Section 349 Deceptive Acts or Practices*

Section 349 of the New York General Business Law prohibits deceptive commercial practices that injure the public, supplying a private right of action to vindicate this right.  *See* N.Y. Gen. Bus. Law § 349(a), (h).  To state a claim under Section 349, "a plaintiff must allege that the defendant (1) engaged in consumer-oriented conduct; (2) that the conduct was materially

misleading; and (3) that the plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 292 (S.D.N.Y. 2015). Plaintiff's claim under this statute, its Fifth Cause of Action, is that Defendants' false counterfeit reports were materially misleading, injured the public by reducing its choice in retailers on Amazon, and injured Plaintiff because of lost sales and reputational damage.

Because the Amended Complaint does not plausibly allege that GM seeks redress for the alleged injury to consumers, the Section 349 claim fails. The reason for the "threshold" requirement that a plaintiff allege that the defendant's conduct is "consumer-oriented" is because Section 349 "is directed at wrongs against the consuming public." *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995). It is true that Plaintiff alleges that Defendants' conduct in causing the de-listing GM's listings of Sigma lenses harms the consuming public by restricting their choice of retailers. (*See* Am. Compl. ¶¶ 47, 124.) As a general matter, an individual seeking to purchase a Sigma lens might reasonably wish to buy—or at least have the option to buy—a Sigma camera lens for less money and no warranty from a retailer like GM instead of being made to purchase the lens for more money from a retailer like Focus to receive a warranty that the purchaser may never use. However, the financial and reputational injuries that GM claims to have suffered are not injuries to consumers. Instead, they are injuries that are "unique to" GM, and thus do not fit into a Section 349 claim. *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (internal quotation marks omitted); *see also MaGee v. Paul Revere Life Ins. Co.*, 954 F. Supp. 582, 586 (E.D.N.Y. 1997) ("[T]he injury must be to the public generally as distinguished from the plaintiff alone."). The motion to dismiss the Section 349 claim or Fifth Cause of Action is therefore GRANTED.

###### D.    *Unfair Competition*

Finally, I address Plaintiff's unfair competition claim, the Sixth Cause of Action. Plaintiff's theory is that Defendants' "acts of interference and false claim sabotage," *i.e.*, the false counterfeit reports, are unfair competition.  (Am. Compl. ¶ 130.)  According to Defendants, this is not a cognizable claim under New York's unfair competition tort.  (Mem. 24–25.)

Plaintiff relies on the "misappropriation branch of the unfair competition tort," which the Second Circuit has observed, "has flourished in a variety of settings."  *Roy Exp. Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982).  The basic idea of misappropriation is that the defendant is "endeavoring to reap where [one] has not sown," *id.* (quoting *Int'l News Serv. v. Associated Press*, 248 U.S. 215, 239 (1918)), "taking 'the skill, expenditures, and labors of a competitor,'" *id.* (quoting *Electrolux Corp. v. Val-Worth, Inc.*, 161 N.E.2d 197, 203 (N.Y. 1959)), and "misappropriating for the commercial advantage of one person a benefit or property right belonging to another," *id.* (internal quotation marks omitted).  Although "New York law in this area is indeed flexible, . . . it is not that flexible."  *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980). "Whatever the breadth and flexibility of such a claim, it depends upon the allegation of facts that, if true, would constitute misuse of plaintiffs' property."  *Dow Jones & Co., Inc. v. Int'l Sec. Exch., Inc.*, 451 F.3d 295, 302 n.8 (2d Cir. 2006); *see also ITC Ltd. v. Punchgini, Inc.*, 880 N.E.2d 852, 859 (N.Y. 2007) (explaining that New York's "time-honored misappropriation theory . . . prohibits a defendant from using a plaintiff[']s property right or commercial advantage").

Here, the Amended Complaint does not allege that Defendants took or misappropriated anything of Plaintiff's in filing the false counterfeit complaints.  (Am. Compl. ¶¶ 129–135.)  The

closest the Amended Complaint comes to alleging misappropriation is in pleading that "[b]y reducing competition from competitors that are willing to sell products at lower prices, Defendants have benefitted from restraining competition." (*Id.* ¶ 72.) However, Plaintiff does not plausibly allege that the Defendants' benefit came at the expense of GM's "property right or commercial advantage" that was "the result[] of [GM's] skill, expenditure, and labors." *ITC*, 880 N.E.2d at 858–59. Plaintiff does not allege or attempt to explain what the property right or commercial advantage is that Defendants allegedly misappropriated; thus, its unfair competition claim fails, and Defendants' motion to dismiss it is GRANTED.

### E.    *Defendants' Counterclaim*

Prior to the filing of Plaintiff's Amended Complaint, Defendants asserted a counterclaim against Plaintiff arising under Section 70-a of the New York Civil Rights Law. (Doc. 33.)[7] Section 70-a "create[s] an affirmative cause of action for certain defendants to recover attorneys' fees and other damages from plaintiffs," *Palin*, 510 F. Supp. 3d at 25, when the plaintiff's "action [(1)] involve[s] public petition and participation[, and (2)] was commenced or continued without a substantial basis in fact and law," N.Y. Civil Rights Law § 70-a(1)(a).

Plaintiff moves to dismiss Defendants' counterclaim, arguing that numerous courts in this District have concluded that this provision of "New York's anti-SLAPP law does not apply in federal court since it "conflicts with the procedures and pleading standards established in Federal Rules of Civil Procedure 12 and 56." *CDC Newburgh*, 692 F. Supp. 3d at 223 (citing *Carroll*,

---

[7] Although Defendants do not address this point in their briefing on the motion to dismiss the amended complaint, my analysis presumes they would reassert their § 70-a counterclaim in an answer to the Amended Complaint. *See Zhang v. Akami Inc.*, No. 15-CV-4946, 2017 WL 4329723, at *9 n.11 (S.D.N.Y. Sept. 26, 2017) ("[C]ourts within and outside of this district have suggested that counterclaims can survive a subsequent amended complaint, assuming that the counterclaims are not otherwise withdrawn in an answer to that amended complaint." (internal quotation marks and citation omitted); *see also GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 100–101 (2d Cir. 2019) (discussing procedure for amended counterclaims).

590 F. Supp. 3d at 584; *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 432 (S.D.N.Y. 2021); *see also Palin*, 510 F. Supp. 3d at 25 n.2 ("Defendants do not ask the Court to apply § 70-a in this action, nor do they contend that the provision would even apply in federal court."). These cases draw on *La Liberte v. Reid*, in which the Second Circuit examined a provision of California's anti-SLAPP statute permitting courts to "strike" claims at the pleading stage "unless . . . the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." 966 F.3d 79, 85 (2d Cir. 2020) (internal quotation marks omitted). The Court of Appeals held that the California provision did not apply in federal court, because by imposing a higher burden on the plaintiff's claims, it conflicted with Rules 12 and 56 of the Federal Rules of Civil Procedure. *Id.* at 85–88. Since the New York statute's "substantial basis in fact and law" standard, N.Y. Civil Rights Law § 70-a(1)(a), also "imposes a different, and higher, burden on the plaintiff at the pleading stage than the Federal Rules of Civil Procedure," it follows that it, too, does not apply in federal court. *Nat'l Acad.*, 551 F. Supp. 3d at 432.

Numerous courts have dismissed Section 70-a counterclaims based on this reasoning. *See CDC Newburgh*, 692 F. Supp. 3d at 223 (denying request to file § 70-a counterclaim); *Nat'l Acad.*, 551 F. Supp. 3d at 432 (dismissing § 70-a counterclaim). *But see Harris v. Am. Acct. Ass'n*, No. 22-811, 2023 WL 2803770, at *3 (2d Cir. Apr. 6, 2023) (dismissing § 70-a counterclaim on the merits after "assuming without deciding that the statute applies in a diversity suit in federal court" (citing *Reid*, 966 F.3d at 88)); *Goldman v. Reddington*, No. 18-CV-3662, 2021 WL 4099462, at *5 (E.D.N.Y. Sept. 9, 2021) (affirming Magistrate Judge's decision not to address argument that § 70-a does not apply in federal court). Defendants argue that *Reid* does not apply because it related to a procedural motion to strike a claim—similar to a 12(b)(6)

motion to dismiss—rather than a "substantive" new claim.  (Countercl. Opp'n 8.)  However, *Reid* also held that the defendant could "[]not recover attorneys' fees" under a separate provision of the California law that awarded attorney's fees to a defendant who prevailed "on a special motion to strike", even if the defendant "later prevail[ed]" on the defamation claim.  966 F.3d at 88–89 (internal quotation marks and emphasis omitted).  Section 70-a, too, permits recovery of "costs and attorney's fees," and, consistent with *Reid*, is inapplicable in federal court because it conflicts with the Federal Rules of Civil Procedure.  Consider the consequence of Defendants' contrary position given my conclusion that Plaintiff states a defamation claim.  *See supra* § IV.A.  To dismiss Defendants' Section 70-a counterclaim, Plaintiff would need to sustain the additional, higher burden of showing that defamation claim had a "substantial basis in fact and law."  Thus, although styled as a substantive cause of action, in practice Section 70-a's inquiry into the strength of a defamation claim operates as a higher pleading standard, therefore conflicting with the Federal Rules of Civil Procedure.  *See Reid*, 966 F.3d at 87 ("The statute . . . establishes the circumstances under which a court must dismiss a plaintiff's claim before trial, a question that is already answered (differently) by Federal Rules 12 and 56." (internal quotation marks omitted)).

Because Section 70-a does not apply in federal court, Plaintiff's motion to dismiss Defendants' counterclaim is GRANTED.

### V.      <u>Conclusion</u>

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint is GRANTED IN PART and DENIED IN PART.  Specifically, the motion is GRANTED as to Plaintiff's claims for trade libel, tortious interference with contract, Section 349 deceptive practices, and unfair competition.  The motion is DENIED as to Plaintiff's claims for defamation

and tortious interference with business relations.  Plaintiff's motion to dismiss Defendants'

counterclaim is GRANTED.

IT IS HEREBY ORDERED that Defendants shall answer Plaintiff's Amended Complaint

on or before May 8, 2025.  I will then issue a referral to the designated Magistrate Judge to

oversee general pretrial proceedings, including discovery.

The Clerk of Court is respectfully directed to terminate the pending motions at Docs. 36

and 53.

SO ORDERED.

Dated: April 24, 2025
          New York, New York

Vernon S. Broderick
United States District Judge